**J.D. MILLER, Plaintiff–Appellant,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION,**
**Defendant–Appellee.**

No. 89–2784.

United States Court of Appeals, Fourth Circuit.

Argued May 8, 1990.

Decided June 22, 1990.

Robert Harvey Chappell, Jr. (David C. Kohler, on brief), Christian, Barton, Epps, Brent & Chappell, Richmond, Va. (William E. Watson, Marc B. Chernenko, William E. Watson & Associates, Wellsburg, W.Va.), for plaintiff–appellant.

Robert Scott Cessar, Sr. Atty. (Thomas A. Schulz, Asst. Gen. Counsel, Charles L. Cope, II, Sr. Counsel, on brief), Federal Deposit Ins. Corp., Washington, D.C., for defendant–appellee.

Before ERVIN, Chief Judge, RUSSELL, Circuit Judge, and BULLOCK, United States District Judge for the Middle District of North Carolina, sitting by designation.

ERVIN, Chief Judge:

J.D. Miller ("Miller") appeals from a decision of the district court granting summary judgment in favor of the Federal Deposit Insurance Corporation (the "FDIC") on its claim for civil penalties which had been assessed against Miller pursuant to the Change in Banking Control Act of 1978, as amended, 12 U.S.C. § 1817 (1988) (the "Act"). On appeal, Miller contends that the district court disregarded a disputed issue of material fact in granting summary judgment to the FDIC, and applied the wrong standard of review in evaluating the amount of the civil money penalty assessed against him by the FDIC. For the reasons articulated below, we affirm the district court's grant of summary judgment with respect to Miller's liability under the Act, and remand on the issue of the amount of the civil money penalty.

## I.

The Citizens Bank of Weirton, West Virginia ("CBW"), is a state-chartered, federally insured bank. On February 26, 1986, the FDIC charged Miller with violating the Act by purchasing a controlling interest in the stock of CBW without providing sixty days' prior written notice of the proposed acquisition as required under 12 U.S.C. § 1817(j)(1). The FDIC sought to collect a $300,000 civil money penalty from Miller for the violation, and he was notified of the charges and given an opportunity to respond to them as provided under 12 U.S.C. § 1817(j)(16). An administrative law judge ("ALJ") conducted a formal agency hearing, concluded that Miller had willfully violated the Act, and recommended a penalty in the amount of $250,000. Thereafter, the FDIC adopted the ALJ's determination of liability, but increased the penalty to $375,-640.

Prior to the administrative hearing, Miller filed a civil complaint against the FDIC in the United States District Court for the Northern District of West Virginia seeking to obtain injunctive and declaratory relief. The district court declined to enjoin the FDIC from pursuing its enforcement action against Miller. At the conclusion of its administrative proceedings, the FDIC filed a late-maturing counterclaim against Miller in the district court pursuant to 12 U.S.C. § 1817(j)(16) to collect the $375,640 civil money penalty assessed against him. On cross-motions for summary judgment on the parties' respective claims, the district court entered summary judgment in favor of the FDIC as to Miller's liability under the Act, and as to the amount of the penalty. Miller now appeals that decision.

## II.

Summary judgments are appropriate in those cases where there is no genuine dispute as to a material fact and it appears that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In other words, sum-

mary judgments should be granted in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law. *Charbonnages De France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979); *Stevens v. Howard D. Johnson Co.,* 181 F.2d 390, 394 (4th Cir.1950). On summary judgment, any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). However, where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. *Id.* at 587, 106 S.Ct. at 1356; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Most importantly, summary judgments are reviewed *de novo* on appeal. *Higgins v. E.I. DuPont De Nemours & Co.,* 863 F.2d 1162, 1166–67 (4th Cir.1988); *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1127–28 (4th Cir.1987).

### III.

■■■ With this standard of review in mind, we turn to Miller's principal assignment of error. As part of the proof scheme under the Act, the FDIC must show that a violation resulted from willful conduct. The relevant provision states:

> Any person who willfully violates any provision of this subsection, or any regulation or order issued by the appropriate Federal banking agency pursuant thereto, shall forfeit and pay a civil penalty of not more than $10,000 per day for each day during which such violation continues. The appropriate Federal banking agency shall have authority to assess such a civil penalty, after giving notice and an opportunity to the person to submit data, views, and arguments, and after giving due consideration to the appropriateness of the penalty with respect to the size of financial resources and good faith of the person charged, the gravity of the violation, and any data, views, and arguments submitted. The agency may collect such civil penalty by agreement with the person or by bringing an action in the appropriate United States district court, except that in any such action, the person against whom the penalty has been assessed shall have a right to trial de novo.

12 U.S.C. § 1817(j)(16).[1] Miller argues that the district court erred in granting the FDIC's motion for summary judgment because there is a disputed issue of material fact with respect to whether he committed a willful violation of the Act. Specifically, Miller maintains that the record contains conflicting evidence on this question. He also cites to the general rule that summary judgment is seldom appropriate in cases wherein particular states of mind are decisive elements of a claim or defense. *See Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364–65 (4th Cir.1985), *abrogated on other grounds, Price Waterhouse v. Hopkins,* —— U.S. ——, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); *Morrison v. Nissan Co., Ltd.,* 601 F.2d 139, 141 (4th Cir.1979); *Charbonnages De France v. Smith,* 597 F.2d at 414. The rationale for this rule is that determinations of intent frequently depend upon the credibility of witnesses. *Ross,* 759 F.2d at 364; *Morrison,* 601 F.2d at 141.

This rule, however, has no application in the instant case because Miller admitted on several occasions that he willfully violated the Act. For example, in his deposition taken by the FDIC on January 9, 1986, Miller testified as follows:

> Q. At that meeting, you told Mr. Schmitt [of the FDIC] that you had purchased thirty-eight percent (38%) of the

---

1. This provision was extensively revised by the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub.L. No. 101–73, § 907(d), 103 Stat. 183 ("FIRREA"). The most recent version of section 1817(j)(16), however, applies solely to conduct engaged in after August 9, 1989, the effective date of FIRREA, and therefore does not pertain to the civil violation at issue in this case. The text of section 1817(j)(16), as amended by FIRREA, is published at 18 U.S.C.A. § 1817(j)(16) (West 1989).

stock of Citizens of Weirton from Theo Rosenberg?

A. [Miller] I believe I did, yes.

Q. Did you tell him that you knew that purchase was in violation of the Change of Bank Control Act?

A. Yes.

In addition, Miller filed two Notices of Acquisition of Control with the FDIC on April 26 and May 3, 1985. These statutory filings identified Miller as an "acquiring party" and the owner of 6995 shares of CBW stock, which represented fifty-six percent of the outstanding shares in that corporation. In a letter dated May 29, 1985, Miller also informed the FDIC that "the bottom line is that I will eventually have to make an injection into capital [at CBW] if my application for change of control is approved." In that letter, Miller stated that, while he did not intend to mislead the FDIC or misrepresent his actions, the opportunity to acquire a controlling interest in CBW arose so abruptly that he was either unable to provide the requisite sixty days' notice or unwilling to delay the purchase. Referring to the sale, Miller wrote: "All of a sudden it became available and I had to act fast." [2]

In his own defense, Miller contends that he had acquired a controlling interest in CBW merely as an agent or "conduit" for Jeremy McCamic ("McCamic"), another CBW shareholder who apparently sought to obtain a controlling interest in CBW. Miller, who is an attorney, claims that McCamic retained him to negotiate the purchase of the 4706 shares of CBW stock held by Bellas because of a strong personality conflict between McCamic and Theo Rosenberg, Bellas' legal representative and daughter. At his administrative hearing, Miller testified that the stock which he acquired from Bellas "went into my name that particular day via a certificate, but I assigned that certificate the same day on the back of it and gave the stock certificate to Jerry McCamic. I was buying the four thousand seven hundred and six shares of stock for Jeremy McCamic."

The record, however, does not support Miller's assertions that he was acting exclusively as McCamic's agent in this matter. First, Miller acquired the Bellas–Rosenberg stock in his own name, and there is no evidence that he transferred any of the shares to McCamic. Moreover, ten months after he purchased the Bellas–Rosenberg stock, Miller testified at his deposition:

Q. Have you sold any of your stock of Citizens of Weirton?

A. [Miller] No.

Q. You still own approximately seven thousand shares?

A. Are you saying that I own it? Is that a statement?

Q. That's a question, do you still own approximately seven thousand shares?

A. I believe I own it, yes.

Furthermore, on two occasions after he acquired a controlling interest in CBW, Miller granted proxies to vote his shares. On the first of these occasions, April 29, 1985, Miller bestowed his proxy on McCamic, who Miller now claims actually owned the stock. There is no reasonable explanation of why Miller simply did not transfer the Bellas–Rosenberg stock to McCamic outright rather than extend only an incident of stock ownership to his purported principal. The only rational conclusion is that Miller owned the Bellas–Rosenberg stock outright, had a controlling interest in CBW, and was acting in concert with McCamic simply for his own benefit.

At most, any uncertainties regarding the willfulness of Miller's violation stem solely from the differences between his own deposition testimony, his testimony during the administrative hearing, his correspondence with the FDIC, and other documentary statements. However, as this court noted in *Barwick v. Celotex Corp.,* "[a] genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plain-

---

**2.** Miller arranged the purchase of the CBW stock from Alexander Bellas ("Bellas") from April 8–23, 1985.

tiff's testimony is correct." 736 F.2d 946, 960 (4th Cir.1984). In light of the preceding discussion, we believe that there was no real dispute of material fact regarding the willfulness of Miller's violation, and that summary disposition with regard to Miller's liability under the Act was appropriate in this case.

## IV.

Miller also contends that the district court applied an incorrect standard of review in evaluating the amount of the civil money penalty imposed on him by the FDIC. The Act provides that any "person against whom the penalty has been assessed shall have a right to trial de novo." 12 U.S.C. § 1817(j)(16). Miller claims that the district court afforded him a *de novo* review only on the question of whether the penalty was justified, and not whether the amount of the penalty was appropriate in light of the violation involved and other relevant considerations. He insists that the court below erroneously utilized an "abuse of discretion" and an "arbitrary and capricious" standard of review.

■ Thus, this court is faced with the question of whether the Act requires a *de novo* review with respect to the imposition of a penalty but allows a more deferential review regarding the amount of the penalty, or whether the Act requires a *de novo* review both as to the imposition and the amount of the penalty. In other words, may a reviewing court rely on the FDIC's expertise in setting the amount of a penalty under the Act once a violation has been properly established?

At the outset, it should be noted that neither the Act nor its legislative history is very helpful in determining the scope or application of the *de novo* standard of review set forth in 12 U.S.C. § 1817(j)(16). Furthermore, there are no reported decisions addressing this precise issue. The district court relied on *Cross v. United States*, 512 F.2d 1212 (4th Cir.1975) (en banc), a case construing the standard of review under the Food Stamp Act, for the general principle that a regulatory agency's determination regarding the amount of

a civil penalty may be sustained absent an abuse of discretion, or a fine which is deemed to be arbitrary and capricious. *See id.* at 1217–18.

The Food Stamp Act of 1964 provides that an aggrieved party may seek judicial review of an adverse agency determination made thereunder, and that such review shall comprise "a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue, except that claims made pursuant to section 16(c) shall be a review on the administrative record." 7 U.S.C.A. § 2023(a) (West Supp.1990). In *Cross*, this court held that "the scope of review of a sanction is not as broad as the scope of review of the fact of violation. The more limited scope of review of a sanction results from the vesting of discretion by Congress in the Secretary [of Agriculture]...." 512 F.2d at 1218. The court concluded that "only in those instances in which it may be fairly said on the *de novo* record as a whole that the Secretary, acting through his designates, has abused his discretion by acting arbitrarily or capriciously, would the district court be warranted in exercising its authority to modify the penalty." *Id.*

Miller argues that the decision in *Cross* is inapplicable to this case because the express language of the Food Stamp Act is quite different from that of the Change in Bank Control Act. We agree. The "de novo" provision under the Food Stamp Act applies to "the validity of the questioned administrative action in issue." In contrast, the "de novo" proviso under the Change in Bank Control Act specifically applies to "the penalty" which has been assessed by the FDIC. Although this distinction may seem unusually fine, we believe that the particularity of section 1817(j)(16) adequately supports our conclusion that all aspects of a penalty assessment by the FDIC must be reviewed *de novo* by the courts. Accordingly, we hold that a district court may not rely on the administrative expertise of the FDIC in evaluating the amount of a civil money penalty imposed under the Act.

In examining the record, it is not apparent what standard of review the district court applied in this case. At one point, the lower court indicated that it "will affirm the penalty assessed by the FDIC provided it is not an abuse of discretion, nor arbitrary, or capricious." In the next breath, the court stated:

> Upon *de novo* review of the entire record, the Court finds that the penalty imposed follows rationally from the facts, is authorized by the statute, and is aimed toward fulfillment of the CBCA's purpose. The FDIC fully considered the total benefit to and the profit earned by Mr. Miller from the purchase and resale of all of the stock, the gravity and length of the violation, as well as the willfulness of the violation, and Mr. Miller's financial resources.

With respect to the amount of the penalty assessed against Miller, the district court may have applied an amalgam of review standards. Accordingly, we remand this case to the district court for further consideration of the appropriateness of the amount of the penalty imposed by the FDIC under a *de novo* review standard.

## V.

Based on the foregoing discussion, we affirm the decision of the district court on the question of Miller's liability under the Act, and remand this case for further consideration of the amount of the civil money penalty imposed by the FDIC.

AFFIRMED IN PART AND REMANDED.