**In re HAYNIE GRAIN SERVICES, INC., Debtor.**

**OFFICIAL CREDITORS' COMMITTEE OF HAYNIE GRAIN SERVICES, INC. and C. David Haacke, Plaintiffs,**

**v.**

**Loyd L. WARREN, Ruby S. Warren and Maryland National Bank and Gerald T. Bunting, Defendants.**

**Bankruptcy No. 85–B–0481.**
**Adv. No. 86–0369B.**

United States Bankruptcy Court, D. Maryland.

March 12, 1991.

Stephen F. Fruin, Whiteford, Taylor & Preston, Baltimore, Md., for Official Creditors' Committee and C. David Haacke, Trustee.

Charles S. Bruce, Jr., Princess Anne, Md., for Creditors' Committee.

David S. Musgrave, Piper & Marbury, Baltimore, Md., for Maryland Nat. Bank.

John B. Robins, IV, Salisbury, Md., for Loyd L. & Ruby S. Warren.

Raymond S. Smethurst, Salisbury, Md., for Gerald T. Bunting.

## MEMORANDUM OPINION GRANTING MOTIONS FOR SUMMARY JUDGMENT AND DISMISSING COMPLAINT

JAMES F. SCHNEIDER, Bankruptcy Judge.

Maryland National Bank and Loyd L. Warren and Ruby S. Warren filed motions for summary judgment [PP. 42 and 44] in this adversary proceeding on July 24, 1990 and August 3, 1990, respectively. The plaintiffs have not responded to either motion. Both motions for summary judgment will be granted and the instant complaint will be dismissed.

### FINDINGS OF FACT

1. Haynie Grain Services, Inc. filed a voluntary Chapter 11 petition in this Court on March 29, 1985. An official committee of unsecured creditors was appointed on April 12, 1985. C. David Haacke was appointed Chapter 11 trustee on May 21, 1985.

2. "Haynie Grain Services, Inc. was formed in 1980. The business of the debtor was originally run as a grain brokerage facility, with the debtor purchasing and selling grain as a broker for others, without owning or maintaining any grain of its own, or owning or operating a grain storage facility.

"In 1984, the debtor entered into a transaction whereby it purchased a grain storage facility located in Princess Anne, Maryland. In connection therewith, the debtor maintained its brokerage business, but also operated a grain storage facility. In connection with the operation of the grain storage facility, the debtor purchased grain from farmers, held the grain, and then attempted to effect sales of such owned grain at a profit to the debtor. The debtor held itself out to operate its grain storage facility in accordance with consistent business practices of similar entities.

"The debtor also formed a subsidiary known as Shore Pet Foods, Inc., which leased a retail facility in Salisbury, Maryland. Said subsidiary was formed in order to operate a retail and/or wholesale distribution center for pet foods and similar products. The subsidiary is operating, but it is believed that its corporate stock, which. is owned by the debtor, has no value at this time ...

"The principal stockholder and executive officer of the debtor was Gerald Bunting, who resided in Worcester County, Maryland. Mr. Bunting, and possibly his family members, controlled the day to day operations of the business of the debtor.

"It is believed that beginning sometime in the fall of 1984 and continuing into the winter of 1984–85, the debtor and Mr. Bunting began to sell or dispose of grain which was stored at the grain storage facility of the debtor, but which grain was not owned by the debtor. By the time that the farmers who had stored their grain at the debtor's facility learned that the grain had been sold or disposed of by the debtor, very little grain if any was left. In addition, during this period of time the debtor purchased grain from various farmers on a deferred payment basis, sold or disposed of

said grain immediately upon receipt, and then failed to pay the farmers for the grain when said payment was due ...

"Mr. Bunting was indicted and convicted of various crimes involving his operation of the grain storage facility. Mr. Bunting has been incarcerated in the federal penal system in connection with said conviction." Disclosure Statement, Article I ("History of the Company") [P. 110] filed October 24, 1986 by the Chapter 11 trustee.

3. Loyd & Ruby Warren made loans to the debtors in the amount of $224,000.00, which sum was reduced as a result of various payments made prepetition and postpetition. Postpetition payments to the Warrens were authorized to be made by the trustee by Consent Order Prohibiting Use of Cash Collateral [P. 5] dated October 18, 1985 filed in Motion No. M85–0761B.

4. On April 18, 1986, Maryland National Bank filed a motion for relief from automatic stay [M86–0386B]. A consent order was entered on the motion on May 27, 1986 which lifted the automatic stay as to Maryland National Bank. The order provided in pertinent part as follows:

> ORDERED, that the automatic stay imposed by 11 U.S.C. § 362 is lifted and terminated as to Maryland National Bank to enable Maryland National Bank to exercise any and all rights which it may have as a secured creditor of Haynie Grain Services, Inc., including repossession and sale in a commercially reasonable manner, and including proceeding with a foreclosure sale, with respect to the following property of the debtor:
>
> A. Inventory, accounts and equipment, and all proceeds thereof;
>
> B. Land and buildings located on Marvel Road, Salisbury, Maryland, ...; and
>
> C. Land and improvements located on the east side of Route 13 south of Princess Anne, Maryland, ...; and it is further
>
> ORDERED, that, notwithstanding the lifting and termination of the automatic stay as to Maryland National Bank, Maryland National Bank may not proceed with a foreclosure sale of, or otherwise take any action with respect to, the debtor's real property improved by a grain facility and scale house, and the debtor's personal property necessary for the operation of the grain facility on or before July 22, 1986; and it is further
>
> ORDERED, that C. David Haacke, Trustee, shall have until July 22, 1986 to procure and obtain a contract for the sale of the debtor's real property consisting of approximately 4.12 acres and improved by a grain facility and scale house, which contract must be acceptable to Maryland National Bank; and it is further
>
> ORDERED, that if C. David Haacke has not procured and obtained such a contract of sale by July 22, 1986, Maryland National Bank may immediately proceed with a foreclosure sale of the debtor's real property consisting of approximately 4.12 acres and improved by a grain facility and scale house, and may take any other action to enforce its rights under its mortgage against the property; and it is further
>
> ORDERED, that C. David Haacke, Trustee, shall deliver to Maryland National Bank or its authorized agent all of the debtor's books and records relating to the debtor's pre-petition accounts receivable, within ten (10) days from the date of this Order; and it is further
>
> ORDERED, that C. David Haacke, Trustee, shall deliver to Maryland National Bank or its authorized agent all of the debtor's books and records relating to the "Shore Pet Food" note receivable, shall immediately notify "Shore Pet Food" that all future payments on the note should be directed to David S. Musgrave, Esquire, Semmes, Bowen & Semmes, 10 Light Street, Baltimore, Maryland 21202, and shall promptly execute an Assignment of the note to Maryland National Bank, upon receipt of the Assignment from Maryland National Bank; and it is further
>
> ORDERED, that this proceeding shall remain open for the sole purpose of determining the extent to which C. David Haacke, Trustee, must turn over to Ma-

ryland National Bank all sums which he has collected on pre-petition accounts and notes receivable, which collections total at least $10,294.76, with respect to which this Court shall hold a hearing on July 11, 1986 at 9:15 A.M.

/s/ JAMES F. SCHNEIDER
United States Bankruptcy Judge

Consented to:

/s/ David S. Musgrave

Semmes, Bowen & Semmes

10 Light Street

Baltimore, MD 21202

Attorneys for Maryland

National Bank

/s/ Stephen F. Fruin

Melnicove, Kaufman, Weiner,

Smouse & Garbis, P.A.

36 S. Charles Street

Baltimore, MD 21201

Attorneys for C. David

Haacke, Trustee

5. On July 11, 1986, a hearing was held on the only issue left unresolved by the consent order, i.e., whether the trustee should be required to turn over to Maryland National Bank all the sums which he had collected on the debtor's prepetition accounts and notes receivable.

6. Following the hearing, this Court ordered the trustee to disburse all funds which he had collected on the debtor's prepetition accounts receivable to Maryland National Bank, by Order dated July 18, 1986 [P. 8].

7. On December 16, 1986, the first complaint for turnover and declaratory relief was filed by the trustee and the creditors' committee against Maryland National Bank. The instant amended complaint was filed on May 28, 1987 [P. 9], in which Mr. Bunting was added as a defendant. Both complaints alleged that the Bank was not entitled to the debtor's prepetition accounts and notes receivable. In a deposition, the Chapter 11 trustee stated that the instant suit was filed so that certain farmers, whose grain had allegedly been converted by the debtor, could receive some money.

Deposition of C. David Haacke, May 20, 1986, p. 55 [Maryland National Bank Motion Exhibit E].

8. The amended complaint alleged that funds received by the Bank from the debtor on March 26, 1985, as a loan payment, resulted from proceeds of the sale of the farmers' grain and from no other source.

9. The defendants claim that the funds in the debtor's account at that time were not solely derived from sale proceeds of grain. For example, $110,000 was deposited into the debtor's Maryland National Bank checking account several days prior to the payment made to the Bank. An additional $114,000 was loaned by the Warrens to the debtor in January or February, 1985 and also was deposited into the account. The majority of the funds in the account at the Maryland National Bank prior to the payment are traceable to Mr. and Mrs. Warren. The debtor also had accounts receivable from other sources. For example, one such account receivable from Shore Pet Food, Inc. had no relation to the farmers' grain.

10. However, the trustee and the creditors' committee acknowledged that the funds held by the Bank, which are the subject of this complaint, are not property of the debtor's estate. Amended Complaint, Paragraph 12.

CONCLUSIONS OF LAW

■ 1. The instant complaint must be dismissed because the complaint for turnover states on its face that the funds which are the subject of the complaint were not legally owned by the debtor and are therefore not property of the Chapter 11 estate. Amended Complaint, paragraph 11 [P. 9].

2. The instant turnover complaint is based upon Section 544 of the Bankruptcy Code, which provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchase of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

(b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544 (1988).

3. In order to invoke the avoidance powers conferred by Section 544, the trustee's turnover complaint must relate to property of the bankruptcy estate.

4. In the instant complaint, the trustee has brought suit on behalf of a restricted class of creditors, namely the farmers whose grain was unlawfully converted by the debtor. The grain was being stored in the debtor's warehouse, but the grain did not belong to the debtor nor could the debtor validly assert any interest in the grain or its proceeds.

5. The trustee in bankruptcy lacks standing to bring the instant complaint on behalf of creditors against third parties to recover funds which are not property of the bankruptcy estate.

6. The joinder of the creditors' committee as co-plaintiff does not alter the result in this case because the committee also lacks standing to sue on behalf of creditors against third parties to recover funds which are not property of the bankruptcy estate.

7. It is appropriate to grant summary judgment to the defendants in this complaint because there is no genuine dispute as to a material fact, i.e. that the recovery sought by the plaintiffs is not property of the estate, and therefore the defendants are entitled to a judgment as a matter of law. *Miller v. F.D.I.C.*, 906 F.2d 972 (4th Cir.1990); Fed.R.Civ.P. 56.

8. Additionally, the instant complaint is barred by the doctrine of *res judicata* because the plaintiffs may not relitigate the entitlement of the Bank and Mr. and Mrs. Warren to proceeds which this Court has previously decided in their favor against the trustee.

For these reasons, the motions for summary judgment will be granted and the instant complaint will be dismissed. Having determined that the complaint cannot withstand motions for summary judgment and that it must be dismissed on jurisdictional grounds, the Court will dismiss the crossclaims between the defendants as well.

ORDER ACCORDINGLY.