936 F.2d 567
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Donna L. LANE, Plaintiff-Appellant,
v.
PINES II LIMITED PARTNERSHIP, a Maryland Limited
Partnership, Anmar Development Company, Incorporated,
General Partner, Pines II Limited Partnership, ARC
Developers, Incorporated, a Virginia corporation, Defendants-Appellees,
and
Pittway Corporation, a Pennsylvania corporation, Defendant.
 No. 90-2458.
 United States Court of Appeals, Fourth Circuit.
 Argued March 6, 1991.
Decided July 2, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Norman P. Ramsey, District Judge. (CA-88-3356-R)
 James Moran Schuette, North Potomac, Md., for appellant.
 Hugh Edward Donovan, Silver Spring, Md. (Argued), appellees; Jill A. Reid, Silver Spring, Md., on brief.
 D.Md.
 AFFIRMED.
 Before ERVIN, Chief Judge, PHILLIPS, Circuit Judge, and JANE A. RESTANI, Judge, United States Court of International Trade, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 This appeal challenges the district court's decision to grant defendant Pines II Limited Partnership (Pines II) summary judgment on a diversity action in tort brought by Donna Lane. Finding no genuine issue of material fact, we affirm.
 
 
 2
 * In the early morning hours of November 15, 1986, a fire broke out in an apartment building owned and managed by Pines II. Both parties agree that the fire started in a basement unit and that the smoke and flames then spread upward. At the time of the fire Lane was asleep in her top-floor apartment. By the time she realized the building was on fire, heavy smoke and flames made leaving by the stairs of the building impossible. As a result, Lane was forced to jump to safety from her third-story apartment. The fall severely injured her ankle and back.
 
 
 3
 To recover for her injuries Lane filed suit against the manufacturer of the smoke detector in her apartment unit and Pines II, as the building owner and manager, alleging negligence in the manufacture and maintenance of her smoke detector as well as the detectors in the other units in her apartment building. The claim against the manufacturer was dismissed, however, when discovery revealed that the smoke detector in her apartment was functioning properly on the night of the fire. Additional discovery ensued after the district court permitted Lane to file an amended complaint over the objection of Pines II.
 
 
 4
 Pines II then moved for summary judgment, contending that the facts alleged by Lane did not show any duty owed by it to Lane that was breached. The district court granted defendant summary judgment on the ground that if there had been a breach, there was no triable issue on causation, and that as a matter of law Pines II was entitled to summary judgment because proximate causation was not established.
 
 
 5
 This appeal followed.
 
 II
 
 6
 We review the decision of the district court to grant Pines II summary judgment de novo. In doing so, we must satisfy ourselves that the evidence read in the light most favorable to the nonmoving party shows that it is "perfectly clear" that no rational trier of fact could find for that party. Miller v. FDIC, 906 F.2d 972, 974 (4th Cir.1990). And we keep in mind that the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" grounds for a court to deny a summary judgment motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).
 
 
 7
 With these principles in mind, we consider the substance of plaintiff's claim. Lane's primary theory for recovery is that she was injured by the failure of Pines II, as the building owner, properly to maintain her co-tenants' smoke detectors. Her position merits attention, since the duty imposed by Maryland statute and county code simply states:
 
 
 8
 (1) Each sleeping area within all occupancies classified residential [defined as over 10 units, which would include defendant's apartment building,] shall be provided with a minimum of one approved smoke detector....
 
 
 9
 Md.Code Ann. art. 38A, Sec. 12A(a) (Michie 1990 Repl.Vol.).
 
 
 10
 A. Requirement. It shall be the responsibility of the owner of each new and existing occupied dwelling unit to install smoke detectors in each such dwelling unit....
 
 
 11
 Montgomery County, Maryland Laws ch. 22, Sec. 22-96 (amended effective Apr. 20, 1978). Pines II asserts that these laws impose a statutory duty only with respect to each dwelling unit and the occupant thereof and points out that Maryland follows the traditional rule that a plaintiff in tort can ground a claim only on a breach of a duty owed to the plaintiff "and not as the vicarious beneficiary of duty to another." Furr v. Spring Grove State Hosp., 454 A.2d 414, 418 (Md.App.1983).
 
 
 12
 Lane pursues this theory because her own expert stated that the detector in her apartment was functioning properly on the night of the fire. However, according to Lane's brief and papers filed with the district court,[1] Lane's expert also stated in his deposition that it was his opinion that the smoke detector in unit 103, the apartment directly above the fire and directly below Lane's apartment, did not work during the fire and, based on his observation and expertise, he opined that one reason it did not work could have been due to the negligent painting over of the smoke detector element by the building manager and owner. Lane relies on this evidence to demonstrate a genuine issue under her theory that the scope of the duty owed by a landlord encompasses not just the proper installation and maintenance of a smoke detector in her apartment, but extends as well to the proper maintenance of smoke detectors in the apartments of her co-tenants.
 
 
 13
 Pines II urges us to reject out of hand such a broad scope of the duty of a landlord. Pines II insists that the duty of installing and maintaining smoke detectors runs only to the occupant of each unit. Pressing that argument to its limit, Pines II contended in oral argument that under this rule, even if all of the other smoke detectors in a building were out of operation due to landlord negligence, just so long as the smoke detector in a claimant's unit was operational, then regardless of where the fire started, or the likelihood that the claimant would have been awakened by shouts and screams of her neighbors, or that someone earlier may have called the fire department, there would be no breach of any duty owed that claimant.
 
 
 14
 This argument may well understate the scope of a landlord's duty in this matter, but we need not decide its exact scope here.[2] Instead, we assume, without deciding, that the smoke detectors in neighboring apartment units exist in part for the benefit of both the tenant and the neighboring tenants. We further assume, arguendo, that the failure of a number of detectors in other units on the night of the fire, a fact conceded arguendo by Pines II at oral argument, would constitute a breach of duty owed Lane if traceable to Pines II's negligence. This enables us to focus on the dispositive flaw in plaintiff's case: the question of causation.
 
 III
 
 15
 Viewing the evidence in the light most favorable to plaintiff, and giving her the benefit of all reasonable inferences, Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir.1979), Lane has failed to demonstrate a genuine issue of material fact as to that question. The facts before the district court were only that the fire started in apartment no. 003; the smoke detector in 103 did not work; and Lane was forced to evacuate apartment 203. Without more, as Pines II rightfully contends, Lane could not establish that the failure of the detector in 103 proximately caused her injuries. And there is no more--Lane failed to supply anything further.
 
 
 16
 In the final analysis, even accepting her theory of breach of duty to her by failure to maintain her co-tenants's smoke detectors, Lane failed to show how the negligent maintenance of the smoke detector in No. 103 was the direct, natural, and probable cause of her injuries. See Scott v. Watson, 359 A.2d 548, 555-56 (Md.App.1976). She fails to present a factual basis for her theory that the tenants of other apartments would have heard their detector, awakened earlier, tried to alert her, or called the fire department. As the district court observed, "the facts in this case fly in the face of this theory as plaintiff has come forward with no evidence showing that any of the tenants in plaintiff's building attempted to warn any other tenant." We agree and find the factual basis for plaintiff's theory too attenuated to withstand summary judgment.
 
 
 17
 As the Supreme Court has said, summary judgment "shall" be entered "against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Because Lane has failed to demonstrate a genuine issue as to causation, summary judgment properly was entered against her.
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 In her briefs to the district court and this court Lane refers to much evidence that was not formally submitted to the district court. In ruling on the summary judgment motion, however, the district court treated all of plaintiff's evidence as actually before it. See J.A. at 111-20. In the interest of justice, we do the same
 
 
 [2]
 Large apartment buildings and hotels are required by Maryland law to have a fire and smoke detection "system," an integrated network designed to alert all residents of a fire anywhere in the building. Md.Code Ann. art. 381, Sec. 12B (Michie 1990 Repl.Vol.). Smaller buildings are not required to have a "system" per se, but instead are required to have a smoke detector in individual units. We presume that the reason for the different statutory requirements is not that life in high rises is valued more than life in low rise buildings, but rather is based in part on the danger of undetected fires in large apartment buildings, a danger not as grave in small building where an expectation that word-of-mouth warnings and proximity to each other is part of an informal "system" designed to protect the occupants of smaller buildings