12 F.3d 206
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bobby O. MOTT, Defendant-Appellant.
 No. 93-1392.
 United States Court of Appeals,
Fourth Circuit.
 Argued: September 30, 1993.
Decided: November 17, 1993.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Fayetteville.
 Brian Kevin Manning, ROSE, RAY, WINFREY, O'CONNOR & LESLIE, P.A., for Appellant.
 G. Norman Acker, III, Assistant United States Attorney, for Appellee.
 James R. Dedrick, United States Attorney, for Appellee.
 E.D.N.C.
 AFFIRMED.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and WILKINSON and HAMILTON, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 The United States on behalf of the Farmers Home Administration (referred to collectively as "the FmHA") brought this action to collect the balance due on a loan that the FmHA made to Bobby O. Mott. The district court granted the FmHA's motion for summary judgment and entered judgment against Mott in the amount of $58,961.94, plus interest and a ten percent surcharge. On appeal, Mott contends that because of oral representations made to him by agents of the FmHA, the FmHA is estopped from seeking to recover a deficiency judgment against him.[1]
 
 I.
 
 2
 We review the district court's grant of summary judgment de novo. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990) (citation omitted). Therefore, we consider the facts in the light most favorable to Appellant Mott.[2] Id.
 
 
 3
 In January of 1985, Mott learned that the FmHA was selling certain farm land in Sampson County, North Carolina, by sealed bid. In March of 1985, Mott submitted a bid for $80,000, and attended the opening of the bids. Mott's bid was the only one that complied with FmHA regulations. At the bid opening, the person opening the bids informed Mott that he would be entitled to purchase the property for $80,000, and that he should await formal notification.
 
 
 4
 After approximately three weeks, Mott contacted the FmHA in Clinton, North Carolina. The FmHA's Assistant County Supervisor, Roberta Hairr, and other FmHA personnel informed Mott that his bid was not the winning bid, and that the property had been sold to John Hendricks of Clinton, North Carolina.[3] Nevertheless, she informed Mott that he could purchase the property if he increased his bid to greater than $140,000. After allegedly being told by FmHa's County Supervisor, William E. Bailey, that if he defaulted the FmHA would seek only to recover the land and would not seek to recover any deficiency, Mott increased his bid to $142,000.
 
 
 5
 At the closing on July 2, 1985, the FmHA and Mott agreed on a deed of trust ("Deed of Trust") and a promissory note ("Promissory Note") in the amount of $127,800. Mott claims that at closing, Bailey again reassured him that the FmHA would not seek to recover any deficiency in the event of a default. Mott's attorney at the closing also allegedly assured him that the Government would only foreclose on the land, and would not seek to recover any deficiency.[4] The closing attorney also allegedly told Mott that the North Carolina antideficiency statute applied to purchases of property from the United States.[5]
 
 
 6
 In January of 1990, Mott discontinued making payments on the Promissory Note. The FmHA foreclosed, netting $79,099.44 after a foreclosure sale. The FmHA filed this action on August 28, 1991, seeking to recover the remaining balance due, plus interest, a ten percent surcharge, and costs.
 
 
 7
 Mott claims that if he had known that the FmHA would seek to recover a deficiency judgment in the event of a foreclosure, he would not have increased his bid. Thus, he contends, he relied to his detriment on the misrepresentations of the FmHA agents. As such, he seeks to estop the FmHA from recovering the deficiency.
 
 II.
 
 8
 The sole issue presented on appeal is whether Mott presented sufficient evidence of the affirmative defense of estoppel to survive the FmHA's motion for summary judgment.
 
 
 9
 To prove estoppel against a private litigant, a party must show that the other party made a misrepresentation of fact, that he reasonably relied upon the misrepresentation, that such reliance was to his detriment, and that the other party had reason to believe that he would rely upon the misrepresentation. Heckler v. Community Health Servs., Inc., 467 U.S. 51, 59 (1984). Equitable estoppel, however, does not apply to the United States in the same manner as it does to private litigants. Office of Personnel Management v. Richmond, 496 U.S. 414, 419 (1990).
 
 
 10
 For equitable estoppel to apply to the United States (or to the FmHA), the party claiming estoppel must show that the government agent who allegedly made the misrepresentation had the authority to make such a representation. See id. at 419-20 (and cases cited therein). In addition, the Supreme Court has suggested that it would be reluctant to uphold a finding of estoppel against the United States absent affirmative misconduct by a government official. See id. at 421-22 (and cases cited therein). Moreover, although the Court has declined to hold that the United States may never be estopped, it has rarely, if ever, upheld a finding of estoppel against it. See id. at 426-27.
 
 
 11
 Even assuming that the United States may be estopped in a contract case under certain circumstances, this case does not present such circumstances.
 
 III.
 
 12
 We assume, as we must, that the FmHA agents assured Mott that the FmHA would not seek to recover any deficiency in the event of foreclosure. Even given this assumption, we believe that it was not reasonable for Mott to rely on the alleged oral representations. The Deed of Trust contained express language to the effect that the FmHA was not bound by state laws "prohibiting maintenance of an action for a deficiency judgment." The Deed of Trust put Mott on notice that the oral assurances may not have been correct, and it was unreasonable for him not to investigate further. See Community Health Servs., 467 U.S. at 59 & n.10. The reasonableness of Mott's reliance, however, may be a question more appropriately left to a factfinder.[6] Nevertheless, even assuming that Mott could survive summary judgment if he were attempting to estop a private litigant, he presents no support for either of the additional elements that might allow estoppel of the FmHA.
 
 
 13
 As noted, Mott must show that the FmHA agents had the authority to make the alleged misrepresentations. O.P.M. v. Richmond, 496 U.S. at 419-20. Mott claims that Bailey's representations were an authorized modification of a contract. See 7 C.F.R. Secs. 1900.2(g), 1900.3 (1993). The regulation upon which Mott relies, however, did not become effective until July 8, 1985, six days after Mott signed the Promissory Note and Deed of Trust. 50 Fed. Reg. 23,897, at 23,902 (1985) (codified at 7 C.F.R. Secs. 1900.2, 1900.3[7]). Therefore, at the time of the alleged statements, Bailey did not have the authority to modify contracts. In addition, our review of the regulations that were in effect at the relevant time indicates that the FmHA agents did not have the authority to make the alleged representations.[8] Therefore, summary judgment was appropriate.
 
 
 14
 Even if we were to find that Bailey had the authority to make the alleged misrepresentations, we would affirm the grant of summary judgment. Mott presents no evidence of affirmative misconduct of the type that might warrant the application of estoppel against the Government. The misrepresentations by Bailey are similar to the types of misinformation supplied by government agents in several cases in which the Supreme Court found estoppel unwarranted. See, e.g., Schweiker v. Hansen, 450 U.S. 785 (1981) (per curiam) (holding that Social Security Administration field representative's incorrect advice to a woman to the effect that she was not eligible for benefits did not amount to affirmative misconduct); Montana v. Kennedy, 366 U.S. 308, 314-15 (1961) (stating that consular official's perhaps "well meant" but incorrect information to a pregnant woman, which deprived her child of United States citizenship,"falls far short of misconduct" such as might estop the United States).
 
 IV.
 
 15
 Considering the facts in the light most favorable to Mott, and assuming that Mott has adduced sufficient evidence to survive summary judgment on the traditional elements of estoppel, his appeal must fail. He does not have sufficient evidence to survive summary judgment with respect to the additional elements necessary to estop the United States. The County Supervisor lacked the authority to inform Mott that, in the event of a default, no deficiency judgment would be sought. In addition, and in the alternative, there is no evidence of affirmative misconduct that might warrant estoppel of the United States. Accordingly, the judgment is
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 To the extent that he continues to pursue any of the other claims that he raised in the district court, they are without merit
 
 
 [2]
 The FmHA disputes Mott's version of the facts, but contends that it is entitled to prevail as a matter of law even assuming Mott's version to be true
 
 
 [3]
 According to Mott, he subsequently has learned that Hendricks never submitted a bid for the property
 
 
 [4]
 Mott was represented at the closing by an attorney whom he selected from a list of attorneys provided to him by Bailey
 
 
 [5]
 See N.C. Gen. Stat. Sec. 45-21.38 (1991) (providing that, under certain circumstances, a seller-mortgagee shall not be entitled to a deficiency judgment against a purchaser-mortgagor in the event of a default)
 
 
 [6]
 In his brief, Mott contends that Bailey stated that the North Carolina anti-deficiency statute would apply to his purchase of the property. Appellant's Brief, at 17. This factual contention is not supported by Mott's affidavit. See Affidavit of Bobby O. Mott, App. at 31-32. If we assume this fact to be true, Mott cannot survive summary judgment on the traditional elements. No reasonable factfinder could find that his reliance on statements that were explicitly contradicted by the Deed of Trust was reasonable
 
 
 [7]
 Cf. 7 C.F.R. Secs. 1900.2(f), 1900.3 (1985) (providing certain officials, but not County Supervisors, the power to modify contracts) with 7 C.F.R. Secs. 1900.2(g), 1900.3 (1986) (providing County Supervisors the power to modify contracts)
 
 
 [8]
 Cf. 7 C.F.R. Secs. 1900.2(k)-(r), 1900.3 (1985) (providing no such authority); 7 C.F.R. Secs. 1900.2(f), 1900.3 (1985) (providing certain officials, but not County Supervisors, the authority to cancel indebtedness and to modify contracts); 7 C.F.R. Sec. 1955.15(b)(2) (1985) (indicating that, except in circumstances not present here, a deficiency judgment must be considered and, if sufficient assets exist, must be pursued upon a default)