**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ISRAEL V. AIKEN; JOSEPH MICHAEL
BOOTLE; MARTY CLAPP; KEVIN
FIRSTER; GINA M. HOLSTEIN;
MARK J. JINKS; FELISHA MIXSON;
MARK J. REID; CLAUDE E. RENTZ;
TIMOTHY NORTON SUTTON; SAMUEL
WILLIAMS; MARIE V. HIGHTOWER,
Plaintiffs-Appellants,

No. 97-2328

v.

COUNTY OF HAMPTON,
Defendant-Appellee,

and

SIDNEY L. DUPREE, Sheriff, in his
official capacity as sheriff of
Hampton County,
Defendant.

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
David C. Norton, District Judge.
(CA-96-1779-18-2)

Argued: June 4, 1998

Decided: September 22, 1998

Before ERVIN and LUTTIG, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished opinion. Judge Ervin wrote the opinion, in
which Judge Luttig and Senior Judge Butzner joined.

**COUNSEL**

**ARGUED:** William Allen Nickles, III, GERGEL, NICKLES & GRANT, P.A., Columbia, South Carolina, for Appellants. Stephen Terry Savitz, GIGNILLIAT, SAVITZ & BETTIS, Columbia, South Carolina, for Appellee. **ON BRIEF:** Richard Mark Gergel, GERGEL, NICKLES & GRANT, P.A., Columbia, South Carolina, for Appellants. Linda Pearce Edwards, GIGNILLIAT, SAVITZ & BETTIS, Columbia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

ERVIN, Circuit Judge:

The appellants in this case are sheriff's deputies and jailers who allege violations of the Fair Labor Standards Act ("FLSA" or the "Act"), 29 U.S.C. § 201 et seq. (1994), because they are paid as "salaried employees" under the "fluctuating work week" provisions of the Act and are thereby deprived of the straight time-and-a-half overtime pay they would be entitled to receive were they treated as "hourly employees." The district court correctly decided that Hampton County properly applied the fluctuating work week provisions of the FLSA and we affirm its decision in all respects.

I.

The Fair Labor Standards Act generally requires that public employees receive compensation for all hours worked in excess of a 40-hour week. 29 U.S.C. § 207(a). Law enforcement officers, such as deputies, are entitled to receive overtime only after working 43 hours. Id. at § 207(k). Employees covered by the FLSA are entitled to receive overtime whether they are paid a straight salary or are paid on an hourly basis. 29 C.F.R. §§ 778.110, 778.113 (1997). The FLSA

2

provides different methods of compensation calculation that employers can use to ensure they pay their employees in a fair manner. In this case, Hampton County has chosen to pay its deputies and its jailers based on the "fluctuating workweek" method of calculating salary and overtime.

The Hampton County sheriff's office employs several deputies and jailers, whom they pay as salaried employees but whose hours of work fluctuate depending on the law enforcement needs of the county in any given week. The deputies and jailers are always scheduled to work at least 43 and 40 hours respectively in any week. Their hours vary only in that frequently the employees work more than the scheduled number of hours.

The deputies and jailers receive overtime pay in accordance with the fluctuating workweek regulation set forth in 29 C.F.R. § 778.114. Overtime pay is calculated by dividing the base pay by the number of hours worked in a particular week. An employee whose base pay is $250 per week, and who works 44 hours in a week, is paid $5.68 per hour for that particular week. He would receive an overtime premium of $2.84, thus bringing his overtime pay to a total of $8.52 per hour. Effectively, then, the employee is earning time-and-a-half for overtime pay. However, his hourly wage, and the amount of overtime pay he earns, fluctuate depending on the total number of hours worked, and both his hourly wage and his overtime pay decrease as his hours increase. Thus, an hourly employee who receives a straight hourly wage and straight time-and-a-half overtime pay could earn more than a salaried employee.

In the Hampton County sheriff's office, if a salaried employee does not work the requisite minimum number of hours in the week, his sick leave or vacation leave is reduced by the number of hours he was absent from work. Hampton County will also deduct leave time in increments as small as one-tenth of an hour when the employees are absent during their scheduled work time. When, however, the employees work fewer than 40 or 43 hours per week but do not have any leave accrued, their pay is not docked, so long as they work at least some hours during the week.

The salaried employees receive eight hours of pay for each designated holiday. They receive that holiday pay in addition to their regu-

3

lar pay when they work on holidays. If the salaried employees record leave but work at least 40 or 43 hours in a week, their leave time is not reduced.

The fluctuating work week regulation may not be employed if it will regularly result in a below-minimum hourly wage. Hampton County pays a "minimum wage adjustment" in those cases where a deputy or jailer works so many hours that his salary is reduced below the minimum wage. Hampton County has used the minimum wage adjustment on five occasions in the approximately two-year period covered by the lawsuit.

Other employees of the Hampton County sheriff's office are paid on an hourly basis and thus receive straight time-and-a-half overtime pay. These hourly employees are subject to the same reductions in leave if they do not work as scheduled. If, however, they take leave that they have not accrued, they are not paid.

Twelve employees who are either deputies or jailers in the Hampton County sheriff's office brought this claim in June, 1996. It covers the time period January 23, 1995 to the present. A previous case, Allen v. Hampton County, C.A. No. 9:94-1498-18, which settled out of court, covered the period preceding January 23, 1995. The district court granted summary judgment for Hampton County in the case before us. On appeal, the deputies and jailers (whom we will collectively refer to as "Aiken," the first named plaintiff in the case) contend that Hampton County's practice violates the FLSA by not paying them adequate amounts of overtime compensation, that Hampton County is liable for liquidated damages under the FLSA, and that Hampton County is liable for trebled damages and attorneys' fees under South Carolina's Payment of Wages Act.

II.

We review a district court's grant of summary judgment de novo. Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). All evidence must be viewed in the light most favorable to the non-moving party, and summary judgment is appropriate if, after viewing all the evidence, the court finds no genuine issue of material fact. Fed. R. Civ. P. 56(c).

4

III.

The crux of Aiken's argument is that Hampton County did not comply with the requirements of 29 C.F.R. § 778.114 ("section 114") and thus could not use the "fluctuating workweek" system to calculate and pay overtime compensation. Contrary to Aiken's statement that section 114 acts as an exception to the strict overtime requirements of the FLSA, this court has held that section 114 is merely an alternative means by which an employer can determine the proper amount of wages to pay its employees. Flood v. New Hanover County, 125 F.3d 249, 252 (4th Cir. 1997).

Hampton County must fulfill the five requirements set forth in section 114 in order to use the "fluctuating workweek" method of payment: (1) the employee's hours must fluctuate from week to week; (2) the employee must receive a fixed weekly salary that remains the same regardless of the number of hours that the employee works during the week; (3) the fixed amount must be sufficient to provide compensation at a regular rate not less than the legal minimum wage; (4) the employer and the employee must have a clear, mutual understanding that the employer will pay the employee a fixed salary regardless of the number of hours worked; and (5) the employee must receive a 50 percent overtime premium in addition to the fixed weekly salary for all hours that the employee works in excess of forty during the week. Id.; 29 C.F.R. § 778.114.

Aiken has stipulated that Hampton County and the deputies and jailers had a clear mutual understanding as to the nature of the fluctuating workweek method of payment except as to the use of a minimum wage adjustment. J.A. at 98. We therefore address only the four disputed criteria here.

A.

Aiken argues that neither the deputies' nor the jailers' regular hours fluctuate under the terms of section 114 because the employees are never scheduled to work fewer than 43 or 40 hours. Only the amount of overtime each is required to work changes from week to week. He claims section 114 was designed to cover situations in which an employee's hours do not follow any kind of regular schedule but fluc-

5

tuate from week to week and may involve working fewer than 40 (or 43) hours in a given week.

Aiken's claim is unavailing. The Seventh Circuit has concluded that fixed base hours topped by fluctuating overtime fit within section 114. Condo v. Sysco Corp., 1 F.3d 599, 603 (7th Cir. 1993) (though work did not fall below 40 hours per week, Condo worked varying amounts of overtime hours and number of hours worked therefore "fluctuated" for purposes of section 114). The Fourth Circuit has not yet directly addressed whether employers may use the fluctuating workweek method when employees work predictable base hours but fluctuating overtime. Impliedly, however, the Fourth Circuit has concluded, in accord with the Seventh Circuit, that fluctuating base hours are not necessary to invoke the fluctuating workweek provision.

In Griffin v. Wake County, this court held that section 114 requires only a schedule that fluctuates, not a schedule that fluctuates in an unpredictable manner. 142 F.3d 712, 715 (4th Cir. 1998). Griffin involved EMTs whose schedules fluctuated in a predictable manner -- they worked either 48 or 72 hours in any given week throughout the year. In essence, they worked both a predictable number of base hours and a predictable amount of overtime, though the amount of overtime varied in any given pay period.

Similarly, in Flood, the employees worked alternating 43 and 51 hour workweeks. The court noted that section 114 generally applied when employees worked a varying or irregular number of hours in a workweek, but fixed-schedule, alternating workweeks also were consistent with the regulation. 125 F.3d at 253. Flood, then, also involved a fixed number of base hours plus a fixed amount of overtime.

In light of this precedent, we hold that Hampton County's practice complies with this part of section 114.

B.

Aiken argues that he and his fellow plaintiffs do not receive a "fixed" salary because Hampton County docks their leave when they fail to work their scheduled number of hours. The regulation provides

6

that the employee "will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many." 29 C.F.R. § 778.112. Hampton County will dock an employee's sick leave or vacation leave whenever the employee fails to work the 40 or 43 scheduled hours in the week, regardless of whether the employee submits a leave form. If, however, the employee submits a leave request, but ends up working 40 or 43 hours anyway, his leave is not docked. Additionally, if an employee has no leave time accrued, Hampton County will not dock the employee's pay for failing to work the scheduled number of hours, unless the employee worked no hours whatsover during the week.

Aiken contends that the employees' pay encompasses fringe benefits such as sick leave and vacation leave and that Hampton County's practice of docking leave time is equivalent to reducing their pay for failing to work a full workweek. This claim has been foreclosed by Griffin. Griffin held that vacation leave and sick leave are extra benefits and that section 114 applies only to pay. 142 F.3d at 717-18. Griffin noted that countenancing a claim that deductions from leave violate section 114 would beg the question of how any system of earned leave time could operate if an employer could never deduct from it whenever an employee takes a vacation. Id. at 718.

Aiken also contends that the mere practice of calculating holiday pay, sick leave, annual leave, and funeral pay by dividing the weekly pay rate by the number of regularly scheduled hours for each employee indicates that the employees are more properly viewed as "hourly" employees as opposed to "salaried" employees. Aiken points to two other employees working in jail administration who are "hourly" employees and who therefore receive straight time-and-a-half for each overtime hour worked. Because their leave pay is calculated in the same manner as that of the deputies and the jailers, Aiken argues, it is yet more evidence that the deputies and jailers are really "hourly" employees.

This argument is also unconvincing. The only cases Aiken cites involve situations where the parties dispute whether certain employees are executives and therefore exempt from any overtime requirements whatsoever, or whether they should be paid some kind of overtime premium. See, e.g. Thomas v. County of Fairfax, 758 F.

7

Supp. 353 (E.D. Va. 1991), aff'd sub nom. Allen v. Fairfax, 16 F.3d 408 (4th Cir. 1994). Nothing in the regulations nor the case law suggests that requiring employees to keep track of the hours worked on an hourly basis defeats their classification as salaried employees; on the contrary, section 114 could not operate if an employer did not keep track of the hours an employee worked. See also Griffin, 142 F.3d at 718 (describing regime in which leave is accrued by reference to number of hours worked); Roy v. County of Lexington, 141 F.3d 533, 538 (4th Cir. 1998) (describing method of calculating overtime hours).

Hampton County therefore does not violate section 114 by deducting time from an employee's leave bank when the employee misses work.

C.

Aiken argues that Hampton County's practice of paying a "minimum wage adjustment" prohibits the County from using the fluctuating workweek payment method. Aiken points to five instances during the approximately two-year time period covered by this case in which Hampton County had to invoke the minimum wage adjustment in order to prevent the affected employees' salaries from falling below minimum wage.

Though Aiken concedes that the Department of Labor has opined that use of a minimum wage adjustment may be permissible in certain circumstances, 27 Op. Wage and Hour Admin. 945 (1969) ("Opinion Letter 945"), he contends that those circumstances are limited to situations that are not foreseeable by and are beyond the control of an employer and that it may only be used to calculate back pay. He further argues that the Secretary of Labor has determined that, once a minimum wage adjustment is made, the employer and employee must reach a new understanding as to hours and compensation. 51 Op. Wage & Hour Admin. 1010 (1969) ("Opinion Letter 1010").

Aiken mistakes the import of the Opinion Letters. Indeed, Opinion Letter 945 seems addressed to precisely this case and supports the district court's conclusion. In the case addressed in Opinion Letter 945, the employer had used a minimum wage adjustment for five weeks

8

in an annual period when the employees had unexpectedly worked sufficient overtime to place their salary below the minimum wage. The letter stated that a variance may be permitted in unusual circumstances so long as the salary is reasonably calculated to give the statutorily applicable minimum hourly rate, and that the bona fides of such a plan were not defeated even if it failed to provide minimum wage in as many as five weeks in one year.

The case addressed by Opinion Letter 1010 involved a situation in which the employer had to make a minimum wage adjustment for 27 weeks in a year. In that case, the Department of Labor found the base salary had not been reasonably calculated to ensure pay above the minimum wage and required the employer and employee to come to a new agreement about either hours worked or compensation paid, or both, to ensure adequate payment to the employee.

Though the Department of Labor's letter rulings do not bind the court, "[they do] constitute a body of experienced and informed judgment" and are entitled to substantial weight. Flood, 125 F.3d at 253 (internal citations omitted). The Opinion Letters suggest that making a minimum wage adjustment on five occasions in a two-year period does not defeat the validity of the fluctuating workweek plan. Moreover, Aiken does not suggest any reluctance on Hampton County's part to make the required adjustment to bring the salary up to minimum wage.

Though Aiken is correct that Opinion Letter 1010 required the employee and employer to renegotiate their agreement because of the 27 weeks during which the previous agreement failed to guarantee the employee minimum wage, Opinion Letter 1010 did not imply that a contract must be renegotiated in all cases. In fact, Opinion Letter 945, which is most closely on point, did not mention renegotiation. It only stated that a variance from the salary regularly paid under the fluctuating workweek method may occur only a "few isolated workweeks" and that such a variance must not be foreseeable to the employer. Here, Aiken does not argue that falling below minimum wage was "foreseeable" except that it happened five times (to four different officers) in a two-year period, and therefore it might happen again. He does not contend that employees are frequently and deliberately

9

required to work such long hours that their salaries fall below minimum wage.

D.

Aiken contends that the employees did not receive an overtime premium for excess hours because the minimum wage adjustment resulted in pay of only $6.38 per hour (based on a minimum wage of $4.25 per hour plus half that at $2.13 per hour), and that amount was less than the base salary rate would have been if one divided the employees' salaries by their regularly scheduled number of hours. Thus, Aiken would receive $7.27 per hour based on a 43 hour week. Aiken therefore argues that paying only $6.38 per overtime hour meant he did not receive the required overtime premium because his regular pay was properly calculated at $7.27 per hour.* The other employees affected by the minimum wage adjustment make a similar argument.

Aiken's claim is not without facial appeal, but is based on a misreading of section 114. Section 114 does say that the arrangement is not permitted when "all the facts indicate that an employee is being paid for his overtime hours at a rate no greater than that which he receives for non-overtime hours." A fluctuating workweek employee's salary is calculated by dividing the number of hours actually worked into the amount of compensation fixed for the pay period. His hourly rate therefore fluctuates with the amount of hours worked, and it diminishes as he works more hours. Flood, 125 F.3d at 253. That hourly amount may not go below minimum wage, however, and an employer may not refuse to pay an overtime premium, nor may an employer attempt to avoid overtime by asking an employee to record fewer hours than he actually works. Nevertheless, nothing in the regu-

_____

*At the time Aiken filed his suit, minimum wage was $4.25 per hour. 29 U.S.C. § 206(a)(1). Minimum wage has since been raised to $5.15 per hour. Id. Thus, the overtime rate Aiken and his colleagues must be paid has risen to $7.73 per hour. For the purposes of this case, we will assume that Aiken has received a raise in the intervening time period and that his current hourly salary, caclulated by dividing the number of hours in a "regular workweek," would still exceed the overtime premium based on minimum wage.

10

lations indicates that the rate an employee receives for non-overtime hours should be calculated based on a workweek comprising only a base number of hours. Indeed, the fundamental premise of section 114 is that there is no "regular" workweek. "[T]he regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week." 29 C.F.R. § 778.114. So long as the hourly pay during a week is greater than minimum wage, the employer is complying with the FLSA. Id. Aiken has produced no evidence to show that the employees were not paid an overtime premium of at least 50% greater than minimum wage.

Hampton County has therefore complied with the requirements of section 114 and Aiken and the other plaintiffs are not entitled to unpaid overtime compensation calculated on a straight time-and-a-half basis.

IV.

Aiken is not entitled to liquidated damages because we have concluded that Hampton County has not violated the Act. His claim that Hampton County violated the South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10 et seq. (1997), by failing to pay the proper amount of wages when they were due must also fail.

AFFIRMED

11