28 F.3d 1208
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Michael A. BREEDLOVE, Plaintiff-Appellant,
v.
NORFOLK AND WESTERN RAILWAY COMPANY, Defendant-Appellee.
 No. 93-1661.
 United States Court of Appeals, Fourth Circuit.
 Argued May 11, 1994.
Decided July 8, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. James R. Spencer, District Judge. (CA-92-724-R)
 Otis Kennedy Forbes, III, Wilson & Hajek, P.C., Virginia Beach, VA, for appellant.
 Barrett Erskine Pope, Durrette, Irvin, Lemons & Fenderson, P.C., Richmond, VA, for appellee.
 Wyatt B. Durrette, Jr., Durrette, Irvin, Lemons & Fenderson, P.C., Richmond, VA, for appellee.
 E.D.Va.
 AFFIRMED.
 Before HAMILTON and MICHAEL, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Michael Breedlove (Breedlove) appeals the district court's grant of summary judgment to Norfolk and Western Railway Company (Norfolk and Western) on Breedlove's Federal Employers' Liability Act (FELA), 45 U.S.C. Sec. 51, claim. For the reasons stated herein, we affirm.
 
 
 2
 * On March 28, 1991, Breedlove was working for Norfolk and Western as an electric welder's helper. Part of his duties included the inspection of high-rail trucks used to transport welding equipment to job sites. A high-rail truck employs wheels, which when lowered, enable it to travel on railroad tracks. Lowering the wheels to make contact with the railroad tracks involves a process of manipulating levers and removing a pin.
 
 
 3
 Breedlove alleges that on March 28, 1991, he injured his arm on the undercarriage of a high-rail truck as he was attempting to remove the pin to lower its wheels. In his answers to Norfolk and Western's interrogatories, Breedlove offered this explanation on how he was injured:
 
 
 4
 [I] bent down beneath the body of a high-rail truck to pull a pin that releases the high-rail wheels of the truck. The pin was stuck but suddenly released as [I] pulled on it. This caused [my] hand to slip from the pin and [my] right elbow to strike the undercarriage of the truck. [I] had to reach under the truck to pull the pin because the push button mechanism which was normally used to release the pin was not working properly.
 
 
 5
 (J.A. 15). Breedlove's deposition testimony concerning the events of March 28, 1991, paints a different set of circumstances. During his deposition, Breedlove testified:
 
 
 6
 Q: All right.
 
 
 7
 I believe you said, and correct me if I am wrong that at the time you didn't realize that there was an incident in connection with removing that pin.
 
 
 8
 What were you referring to?
 
 
 9
 A: I don't remember saying I had bumped my arm or anything. I was getting the truck ready to go to work and was in a hurry....
 
 
 10
 Q: At the time that you claim that you bumped your arm on March 28, 1991, while removing or attempting to remove the pin, is it your testimony that you were not aware at that time that you had bumped your arm?
 
 
 11
 A: I wasn't aware of it....
 
 
 12
 Q: Well, now, are you saying you were aware that you had bumped your arm, and you didn't give it any thought, or are you saying that you were not aware that you had bumped your arm? I thought you said that you were not aware that you had bumped your arm.
 
 
 13
 A: I didn't realize I had did [sic] it at the time.
 
 
 14
 (J.A. 32-34). Thereafter, Breedlove reiterated his previous testimony that he did not know that he had bumped his arm:
 
 
 15
 Q: And because in instances in the past you had bumped your arm, that you assumed or concluded that the reason you were experiencing pain and discomfort [on March 28, 1991] was because you must have bumped your arm on the morning of the 28th ...; is that what you're saying?
 
 
 16
 A: I had bumped my arm on it before [i.e. on other occasions].
 
 
 17
 Q: Right.
 
 
 18
 You have told me that you had bumped your arm on it before, and I gather in those instances you probably felt some pain and discomfort, correct?
 
 
 19
 A: That's right.
 
 
 20
 Q: Later on the morning of March the 28th, 1991, you likewise experienced some pain or discomfort in your arm?
 
 
 21
 A: That's correct.
 
 
 22
 Q: That's correct?
 
 
 23
 Are you [sic] saying that because you experienced some pain and discomfort later on in the morning of the 28th that you assumed or concluded that it must have been because you had bumped your arm when you were trying to remove the pin? Is that your testimony?
 
 
 24
 A: That's right.
 
 
 25
 Q: Okay.
 
 
 26
 That is an assumption you made?
 
 
 27
 A: Yes, correct....
 
 
 28
 Q: [Y]ou were not aware that you had bumped your arm at that time, correct?
 
 
 29
 A: I wasn't aware of it at the time, no.
 
 
 30
 (J.A. 35-37). Breedlove also testified that he first realized he bumped his arm on the undercarriage of the high-rail truck at least two weeks after the alleged incident.[1]
 
 
 31
 In an effort to resurrect his claim, Breedlove offered the following testimony during his deposition:
 
 
 32
 Q: How did you know that you struck your elbow on the frame of that truck on March 28, 1991?
 
 
 33
 A: I had like a stinging feeling in my elbow, and it just went away pretty sudden, and just as sudden as it came on. I didn't give much thought about it.
 
 
 34
 Q: Did this stinging feeling that you're talking about now happen as soon as you struck your elbow against the frame of the truck?
 
 
 35
 A: When I pulled the pin out and came [sic] out too fast, and that is when I bumped the inside frame of the truck.
 
 
 36
 Q: Did you physically feel your elbow strike something on the undercarriage of that truck on March the 28th?
 
 
 37
 A: Yes, I did....
 
 
 38
 Q: Did you feel any pain whatsoever immediately at the time when your arm struck the undercarriage of the vehicle on March the 28th, 1991?
 
 
 39
 A: I had a slight tingling feeling, but I didn't pay any attention to it.
 
 
 40
 (J.A. 63).
 
 
 41
 Breedlove did not inform either E.B. Bailey or G.L. Moody, two employees of Norfolk and Western who arranged for medical assistance the day his injury allegedly occurred, that he had struck his arm as he now contends. Rather, Breedlove informed Bailey on the morning of March 28 that a bee or some other insect had stung him on the elbow.
 
 
 42
 Breedlove received medical attention from Dr. Mary Donovan in Burkeville, Virginia on the day he allegedly injured himself. Breedlove did not recall telling Dr. Donovan about striking his arm. After visiting Dr. Donovan, Breedlove began seeing Dr. Donovan's colleague, Dr. John Wine. Although he visited Dr. Wine on two occasions (April 2 and April 11), Breedlove never mentioned how he injured his arm.[2] Thereafter, Breedlove received treatment from Dr. Carmelino Galang, but did not tell him about having struck his arm on the high-rail truck. Breedlove admits that the first time he told any health care provider about hitting his arm was when he first saw Dr. Ronald Haney on April 17, 1991, approximately three weeks following the date of the alleged incident. Dr. Haney diagnosed Breedlove's elbow as an occult fracture.[3]
 
 
 43
 On November 9, 1992, Breedlove brought an action under FELA against Norfolk and Western for the injuries he allegedly sustained as a result of bumping his arm. Prior to trial, Norfolk and Western moved for summary judgment. The district court granted Norfolk and Western's motion. The district court concluded that no reasonable jury could find for Breedlove because he could not establish that the condition of his elbow was caused by the negligence of Norfolk and Western.
 
 
 44
 Breedlove now appeals.
 
 II
 
 45
 The standard of appellate review for the granting or denial of summary judgment is de novo. Thus, the court of appeals uses the same standard as the district court. A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). See Charbonnages de France v. Smith, 597 F.2d 406 (4th Cir.1979).
 
 
 46
 A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. Id. at 255. The plaintiff is entitled to have the credibility of all its evidence presumed. Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir.1990), cert. denied, 111 S.Ct. 1018 (1991). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The opposing party must demonstrate that a triable issue of fact exists; it may not rest upon mere allegations or denials. Anderson, 477 U.S. at 248. A mere scintilla of evidence supporting the case is insufficient. Id.
 
 III
 
 47
 Section one of the FELA, 45 U.S.C. Sec. 51, creates a cause of action for railway employees who have been killed or injured by the railway's negligence. It provides:
 
 
 48
 Every common carrier by railroad while engaging in commerce between any of the several States ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.
 
 
 49
 This statute has been interpreted by our court to permit recovery if the employer's "negligence played any part, even the slightest, in producing the injury or death for which damages are sought." Brown v. Baltimore & O. R.R., 805 F.2d 1133, 1137 (4th Cir.1986); see also Rogers v. Missouri Pac. R.R., 352 U.S. 500, 506 (1957). The standard of proof in a FELA claim is "most lenient." Brown, 805 F.2d at 1137. However, even so, Breedlove must establish some act of negligence by Norfolk and Western in order to prevail. Hurley v. Patapasco & B. R.R., 888 F.2d 327, 329 (4th Cir.1989).
 
 
 50
 In this case, Breedlove has not established that his injuries were caused in whole or in part by the negligence of Norfolk and Western. The substance of Breedlove's deposition is that he was not able to testify how he was injured, i.e., that he experienced a blow to his elbow. Throughout his deposition, Breedlove assumes that because he suffered pain after working underneath the high-rail truck, and on previous occasions he allegedly struck his elbow at work, then he must have experienced pain that particular day due to a blow to his elbow. Breedlove admitted repeatedly that he did not recall that he had bumped his elbow and that he simply assumed that he had suffered such a blow based solely upon prior instances of bumping his arm at work. The following exchange is most telling:
 
 
 51
 Q: When I asked you on direct examination, Mr. Breedlove, to tell me how you determined that you had struck your elbow on the truck--
 
 
 52
 A: Yes, sir.
 
 
 53
 Q: You told me, did you not, about the stinging sensation you felt about 15 minutes later and how historically you had bumped your elbow before, and therefore you concluded that because you had a stinging sensation, and other times before you had bumped your elbow, that you must have bumped your elbow this time. Wasn't that what you told me on direct examination?
 
 
 54
 A: Yes, sir.
 
 
 55
 Q: That is the best recollection you have as you sit here today, isn't it?
 
 
 56
 A: Yes, sir.
 
 
 57
 (J.A. 134-35). Thus, Breedlove's best recollection is that he simply assumed that he bumped his elbow because of the stinging sensation he began to experience after he finished checking the high-rail truck. Breedlove did not tell two railroad employees about striking his elbow before receiving medical attention that day. Furthermore, he failed to make such a statement to Drs. Donovan or Wine. Under the circumstances, Breedlove has failed to establish that his injury was caused in whole or in part by the negligence of Norfolk and Western.
 
 
 58
 Breedlove seeks to avoid the clear and unmistakable import of his testimony by pointing to portions of his deposition testimony in which it may be inferred that he bumped his arm on the undercarriage of the high-rail truck. In essence, Breedlove's argument is tantamount to a request for a determination of "which of the two conflicting versions of [his] testimony is correct." Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir.1984). Under such circumstances, a genuine issue of fact cannot be created. Id.; see also Townley v. Norfolk and Western Ry. Co., 887 F.2d 498, 501 (4th Cir.1989) ("Townley may not use the contradictions in his own testimony to create an issue of fact for the jury."); Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 975-76 (4th Cir.1990). In summary, the district court correctly concluded that "no reasonable juror could find, on the evidence proffered by plaintiff, that Mr. Breedlove's injuries resulted from the negligence of defendant." (J.A. 165).
 
 IV
 
 59
 For the reasons stated herein, the judgment of the district court is affirmed.
 
 AFFIRMED
 
 
 [1]
 Specifically, Breedlove testified:
 Q: So it is your testimony that on or about Thursday, April the 12th, more specifically that evening, was the first time that you realized you had struck your elbow while attempting to remove or removing that pin back on March 28th, correct?
 A: That's correct.
 (J.A. 41).
 
 
 [2]
 Drs. Donovan and Wine diagnosed Breedlove's problem as olecranon bursitis
 
 
 [3]
 An "occult fracture" is a fracture that is not detectable on an x-ray, although other clinical signs of a fracture are present