**AMERICA'S FAVORITE CHICKEN COMPANY**

v.

**SURYOUTOMO, et al.**

Civ. A. No. 93–2712.

United States District Court, E.D. Louisiana.

June 27, 1995.

---

Steven W. Copley, Ernest Enrique Svenson, Gordon, Arata, McCollam & Duplantis, New Orleans, LA, Peter J. Klarfeld, James C. Rubinger, Seth E. Bloom, Brownstein, Zeidman & Lore, Washington, DC, Lawrence Victor Ashe, Zarco & Associates, Miami, FL, for America's Favorite Chicken Co.

Mary Ellen Roy, S. Ault Hootsell, III, Brent Bennett Barriere, Debra J. Hale, Phelps Dunbar, New Orleans, LA, Robert Zarco, Robert M. Einhorn, Lawrence Victor Ashe, Zarco & Associates, Miami, FL, for Herman Suryoutomo.

Mary Ellen Roy, S. Ault Hootsell, III, Brent Bennett Barriere, Debra J. Hale, Phelps Dunbar, New Orleans, LA, Robert Zarco, Robert M. Einhorn, Zarco & Associates, Miami, FL, for Prima Food Corp.

### ORDER AND REASONS

JONES, District Judge.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, America's Favorite Chicken Company moves to dismiss the defendants' counterclaims and third-party claims for failure to state a claim on which relief can be granted. For the reasons more fully articulated below, the Court GRANTS the motion to dismiss.

### Background

America's Favorite Chicken Company ("AFC") is the franchisor of Popeyes restaurants. Herman Suryoutomo (Suryoutomo), was a Popeyes franchisee, and Prima Food Corporation (Prima), is Suryoutomo's operating company. Suryoutomo began his relationship with Popeyes when he entered into a development agreement in 1985 that permitted him to develop twelve restaurants in the region of Sacramento, California. Suryoutomo developed two restaurants which were governed by franchise agreements entered

into on June 2, 1986 and May 25, 1987. The franchise agreements required Suryoutomo to pay the franchisor a royalty and advertising fee.

Suryoutomo assigned the franchise agreements to Meredith L. Willis and Klint H. Stander on September 5, 1989. An assignment required the prior consent of AFC, which had the right of first refusal regarding the sale of Suryoutomo's interests in the franchise. AFC agreed to the assignment. Suryoutomo and Prima agreed to guarantee the new franchisees' performance for one year. AFC agreed to release the defendants from further obligations under the development and franchise agreements.

The assignment agreement contained a provision, paragraph 8, that released the franchisor from all past, present or future claims arising under the development and franchise agreements.

In 1990, Willis and Stander defaulted on their obligations to pay royalties and advertising fees. AFC's predecessor sued them under the franchise agreements and Suryoutomo under the one-year guarantee. In 1991, without another franchise agreement, Suryoutomo and Prima took over the two restaurants after Willis and Stander defaulted pursuant to a settlement agreement between Stander, Suryoutomo and Prima.

Suryoutomo and Prima never paid AFC royalties or advertising fees after the restaurants were taken over. As a result, AFC demanded that Suryoutomo and Prima stop using the marks and system of Popeyes. AFC also attempted to stop the supplier from providing proprietary products to Suryoutomo and Prima. In June of 1993, a Louisiana state court granted a preliminary injunction to prohibit AFC from withholding the products to Suryoutomo and Prima, until further order or until the franchise agreements were terminated.[1]

Because the restaurant operation continued, AFC brought this action in August of 1993. A preliminary injunction was issued the following month. (R.Doc. 10).

In January of 1995, Suryoutomo and Prima filed the counterclaim and third-party action that AFC seeks to dismiss through the present motion. Dismissal was sought on the grounds that all claims made have been released through the provisions of the assignment agreement.

### Law and Argument

AFC alleges that all claims made in the counterclaims and third-party claims arise out of the franchise and development agreements, and as a result of the release in the assignment agreement, all of the claims against AFC are barred.

The release, paragraph 8 of the assignment agreement, provides:

> Assignor hereby forever relinquishes all rights, interests and claims of whatever nature to, in or under the Development Agreement and Franchise Agreements, the purchase thereof and the relationships created thereby, and does hereby forever discharge and release Franchisor, its predecessors, its successors, and its present and former officers, directors, agents and employees from any and all claims, causes of action, obligations and liabilities arising from, under or out of the Development Agreement and Franchise Agreements prior to the effective date hereof, and further does hereby generally release all said parties from all manner of action(s), cause(s) of action, suits, damages, judgments, executions, claims and demands whatsoever in law or in equity which Assignor ever had, now has or may hereafter have, known or unknown, arising out of, under, from or in connection with the Development Agreement and Franchise Agreements, the purchase thereof, the relationships created thereby, or any other act or occurrence of any kind whatsoever.

Unambiguous releases of past, present or future known or unknown claims bar those claims. *Ingram Corp. v. J. Ray McDermott & Co.*, 698 F.2d 1295, 1310–13 (5th Cir.1983); *Brock v. Entre Computer Centers, Inc.*, 933 F.2d 1253, 1261 (4th Cir.

---

1. Order of June 22, 1993, from the 24th Judicial District Court in *Al Copeland Ent., Inc. v. Willis,* *et al.,* No. 406–535.

1991). Under the plain words of the release, the defendants should not be able to bring their counterclaims and third-party claims. But the defendants maintain that the release is invalid for reasons that include lack of consideration. Parol evidence should be considered in cases involving fraud, mistake, illegality or failure of consideration. *Brown ex rel. Brown v. Drillers, Inc.,* 630 So.2d 741, 749 (La.1994).

## I. Consideration

■ Suryoutomo and Prima maintain that the release lacked consideration as contemplated by Article 3071 of the Louisiana Civil Code, which provides in part that a "transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing."

Suryoutomo and Prima contend that they received nothing in exchange for the release and thus the compromise is invalid because the franchisor was not to "unreasonably withhold consent to any transfer." *See, Williams v. Winn Dixie,* 447 So.2d 8, 10 (La.App. 4th Cir.1984). Suryoutomo argues that AFC unreasonably withheld consent by refusing to allow the assignment unless the release was signed.

The Court finds no compelling evidence showing that AFC unreasonably withheld consent to the transfer, nor that plaintiff forced Suryoutomo through duress to execute the release, but only defendants' conclusory allegations. The fact of the matter is that AFC waived its right to refusal, and there was consideration provided in addition to the consent to transfer. Furthermore, AFC released Suryoutomo from the development and franchise agreements, and dismissed an action pending against Suryoutomo and Prima. In a similar situation, *Brock* held that consent to transfer in itself was adequate consideration for the release. *Brock* at 1261.

## II. Misrepresentation

■ Suryoutomo put forth an unconvincing argument that he detrimentally relied on the misrepresentations of AFC employees, who allegedly stated that Suryoutomo would not lose his right to sue and that AFC would not enforce that aspect of the release. Suryoutomo also claims to have relied on a Uniform Franchise Offering Circular ("UFOC"), which exempted from the release, any claims arising under the California Franchise Registration and Disclosure Act. In contrast, a plain reading of the agreement reveals that the franchise agreement did not exclude those California claims from the franchise agreement. Section XII of the franchise agreement simply required that a general release be executed, of "any and all claims" against the franchisor.

■ To void the agreement, a misrepresentation 1) must have been fraudulent or material, 2) must have induced the recipient to agree to the contract, and 3) the recipient must have been justified in relying on the misrepresentation. *Tingle v. Pacific Mutual Insurance Co.,* 837 F.Supp. 191 (W.D.La. 1993).

■ In this case, Suryoutomo was allegedly misled by amorphous promises of future actions. Unfulfilled, future promises, without more, do not constitute fraud, *Wright Bros. Corp. v. Colomb,* 517 So.2d 1194, 1197 (La.App. 4th Cir.1987), especially where oral statements contradict the terms of a writing. *Piantes v. Pepperidge Farm,* 875 F.Supp. 929, 934 (D.Mass.1995). Notwithstanding the UFOC, Suryoutomo knew that he had to sign the release in order to sell his franchise, and expressly agreed to the provision when he signed the franchise agreement. He also signed the assignment agreement containing the release. It would be unreasonable for Suryoutomo to rely on oral representations when he was contemporaneously faced with the contents of the written document.

## III. Future Claims

■ AFC contends that the release barred Suryoutomo and Prima from all future claims in addition to past claims, and such a release is permissible so long as the language of the

release is unequivocal. *Brown, supra.* AFC relies on the release's statement that Suryoutomo and Prima "hereby generally release [AFC] from all manner of action(s) ... whatsoever in law or in equity which [they] ... may hereafter have, known or unknown...."

Suryoutomo and Prima claim that neither party contemplated that the franchise relationship would be recontinued after the assignment, and therefore, even if the release applies to the initial relationship, claims tied to the recommencement of operations should not be considered released. Article 3073 of the Louisiana Civil Code provides in part that transactions only regulate and extend to matters that were intended.

The facts and circumstances surrounding the assignment agreement indicate that Suryoutomo and Prima were well aware of the possible effects of the release, and that causes of action could accrue after the first relationship of franchisor/franchisee was terminated. The Declaration of Herman Suryoutomo states that "[a]t the time of signing of the Agreement, my strongest concerns were my ability to sue [AFC] should any issues develop in the future, including the possibility of [AFC] initiating suit against me, and my continuing guarantee for one (1) year of the performance of Meredith L. Willis and Klint H. Stander, the assignees." (R.Doc. 63, Exh. A, at 2). By his own statement, Suryoutomo makes clear that he knew the breadth of the release and its consequences, yet signed it despite his reservations. He is bound by the release.

Finally, Suryoutomo and Prima argue that as assignees under the settlement agreement with Stander, they should be entitled to bring the actions that Willis and Stander could have brought, including claims under the California Investment Law Act, Corp. Code §§ 31000 *et seq.* This argument fails, for Stander and Willis attained no causes of action pursuant to the assignment, the release having eliminated all claims both prior to the assignment and after the assignment. *See, Brock* at 1260.

### Conclusion

Accordingly,

IT IS ORDERED that AFC's motion to dismiss counterclaims and third-party claims BE, and hereby is GRANTED.