DENNIS, Circuit Judge,
dissenting:
I respectfully dissent because (1) the Central States plaintiffs failed to establish the necessary factual basis under Louisiana partnership law to prove that Terry Smith was authorized to amend the Creative partnership contract so as to change the proportionate share of each partner’s capital interest and to transfer an interest in the capital of Creative to a third person; (2) under Louisiana law a partnership *424 agreement is a simple contract, and the unanimous consent of the partners is required to amend the partnership contract; (3) the majority concedes that plaintiffs failed to prove that Terry Smith was authorized by unanimous consent of the Creative partners to act for them in his transaction with Beychok; (4) because an amendment of the partnership contract is required to change or affect any partner’s capital or profit interest, Terry Smith was not authorized to grant or transfer to Bey-chok an interest in the capital of the Creative partnership; (5) under Louisiana law a partner may agree between himself and a third person to share that partner’s interest in the partnership, but such an agreement cannot give the third person any interest in the partnership or affect the other partners’ interests; and a partner’s heirs, assigns, or seizing creditors are entitled to an amount equal to the value that the share of the former partner had at the time membership ceased; but, a third person cannot acquire, succeed to, or seize a partner’s membership or interest in the capital of the partnership without amendment of the partnership contract, which requires unanimous consent of the other partners; therefore, lacking unanimous consent of the partners to amend the partnership contract, Beychok could not acquire an interest in the capital of the partnership; (6) contrary to the majority’s assumption, the federal laws and regulations do not consider that anyone other than a partner has an interest in the profits or capital of a partnership.
I. Determinative Issue on Appeal
In order to hold the individual Creative partners liable for the $1.35 million withdrawal liability of Wolf Baking, Central States must prove (1) that Creative was under “common control” with Wolf Baking and (2) that both Creative and Wolf Baking were “trades or businesses.” See 29 U.S.C. § 1301(b)(1). See, e.g., Central States v. Personnel, Inc., 974 F.2d 789, 792 (7th Cir.1992); Central States v. White, 2000 WL 690346, *4 (N.D.Ill.); Central States v. Stroh Brewery Co., 220 B.R. 959 (N.D.Ill.1997). The district court found that the two entities involved, Creative and Wolf Baking, were never under common control, and therefore that the Creative partners were not liable for Wolf Baking’s debt under the MPPAA. Because the district court apparently did not reach the issue of “trades or businesses,” we are called upon to decide only whether Creative and Wolf Baking were under common control under the MPPAA, applicable Treasury regulations, and Louisiana partnership law.
II. The MPPAA and the Treasury Regulations under section 414(c) of Title 26
The MPPAA provides that “under regulations prescribed by the [Pension Benefit Guaranty Corporation], all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as a single employer. The regulations prescribed under the preceding sentence shall be consistent and coextensive with regulations prescribed for similar purposes by the Secretary of the Treasury under section 414(c) of Title 26.” 29 U.S.C. § 1301(b)(1). In the absence of independent regulations promulgated by the corporation, we refer to the pertinent Secretary of the Treasury’s regulations, 26 CFR § 1.414(c).
The criteria for determining whether there is common control of a “brother-sister group of trades or businesses” is provided by 26 CFR § 1.414(c)-2(c). The definition of such a group requires, inter alia, that the same persons own a controlling interest in each of the trades or businesses in question. With respect to partnerships, § 1.414(c)-4(a) states: “In determining the ownership of an interest in an organization for purposes of § 1.414(e)-2 ... the term ‘interest’ means: in the case of ... a partnership, an interest in the profits or capital.” 26 C.F.R. § 1.414(c)-4(a).
*425 The majority apparently assumes that the regulation implicitly recognizes that an “interest in the profits or capital” of a partnership may be transferred by a single partner to a third party who is not a partner. The majority does not cite any authority for that proposition, and I have found no indication of such a phenomenon. In the common usage of the Internal Revenue Code, the Secretary of the Treasury’s regulations, tax law scholars, and tax law practitioners, “capital interest” refers, in the partnership context, to a partner’s capital interest. In fact, the Internal Revenue Code and regulations evidently presume that only the partners own interests in the capital of the partnership.[1] See 26 U.S.C. §§ 706(b)(1), 706(b)(3), 707(b)(1)(A), 707(b)(2)(A), 708(b)(2)(A), 708(b)(2)(B), 743(b); 26 C.F.R. §§ 1.721-l(b)(l), 1.704-1(e). Regulation § 1.704-l(e), which “defines a capital interest as any interest in the assets of the partnership to which the partner is entitled upon withdrawal from the partnership or upon the liquidation of the partnership and distinguishes that interest from a mere right to participate in the earnings and profits of the partnership^ provides an] ... appropriate definition for most, if not all, purposes of the Code.” ARTHUR B. Willis, et. al, Partnership Taxation ¶ 1.07[3], at 1-112 (6th Ed.l999)(hereinafter “Willis”)(emphasis added).[2] Consequently, I believe the majority is mistaken in its apparent assumption that the Federal tax laws and Treasury regulations suggest the existence of substantive partnership laws permitting a single partner to favor third persons with free-floating interests in the profits and capital of the partnership without the consent of the other partners.
III. Louisiana Law of Partnerships
Proceeding under the false conception that someone other than a partner can hold a capital interest in a partnership under the applicable Federal Tax laws and Treasury regulations, the majority opinion mistakenly concludes that such an arrangement is possible under Louisiana partnership law. The majority concludes that (1) under Louisiana law any partner of a partnership, without either authorization by the partnership agreement or the unanimous consent of the partners, has the legal power to create and transfer to a third person a capital or an income interest in the partnership; and that (2) Central States proved by a preponderance of the evidence that the undefined “interest” in Creative which Terry Smith transferred to Beychok was intended by them to be an interest in the capital of the partnership. In my opinion, the majority’s interpretation of the Louisiana partnership law provisions is contrary to the plain meaning of the law, and its finding that Terry Smith intended and was authorized to transfer a capital interest in Creative to Beychok in the June 1, 1986 agreement is not supported by the contract or the record as a whole.[3]
*426 A. Terry Smith Was Not Authorized to Enter the Transaction on Behalf of Creative
For proof that Beychok owned a capital interest in Creative, Central States relies upon the June 1, 1986 written contract whereby Terry Smith professed to transfer to Sheldon Beychok an undefined “interest” in the Creative partnership. Smith was the only signatory or party who claimed that he acted in behalf of Creative. Jack S. Rome, Jr., a partner in Creative, professed to act and sign the contract only on behalf of Wolf Baking. Beychok signed only for himself individually. Central States failed to introduce any evidence to prove that the other partners of Creative, Jack S. Rome, Jr., Suzanne McCraine Rome, and Sandra Theriot Smith, authorized or ratified Smith’s transfer of the undefined “interest,” much less an interest in the capital of Creative, to Beychok. Even if it could be assumed without supporting evidence that Rome, as a partner in Creative, by signing the contract only for Wolf Baking, consented for himself to Smith’s transfer of an undefined “interest” to Beychok, there is still no evidence of consent by the other partners and none that Rome intended for Smith to transfer an interest in the capital of Creative to Beychok.
B. Such Unauthorized Transfer Is Not Allowed Under Louisiana Law
Under Louisiana law, a partnership is a juridical person, distinct from its partners. La. Civ.Code art. 2801. The legislative decision to establish a partnership as a separate and distinct entity, different from its partners, expressly reflected in Article 2801, permeates all of the Louisiana Civil Code’s partnership provisions. Max Nathan, Jr., Reporter, Partnership Law Revision Committee, Introduction: 1980 Partnership Revision, 12 West’s LSA Louisiana Civil Code pp. 3, 5 (1994). When partners create a partnership, they utilize contract law to create a new, separate and distinct legal entity. Id.
Unless the partners have agreed otherwise in the partnership agreement or subsequently, each partner participates equally in the profits, commercial benefits, and losses of the partnership. La. Civ.Code art. 2803. Unanimous agreement of the partners is required to amend the partnership agreement, to admit new partners, or to terminate the partnership. La. Civ. *427 Code art. 2807. Major decisions of this type obviously are of sufficient importance to require the unanimous agreement of the partners. Id., comment (b). In the absence of an express prohibition in the partnership agreement, a partner may share or associate a third person in his own interest in the partnership without the consent of his partners, but this association in the single partner’s interest does not make the third person a member of the partnership. La. Civ.Code art. 2812 and comment.
A partner is a mandatary or agent of the partnership for all matters in the ordinary course of its business, except for the alienation, lease, or encumbrance of the partnership’s immovables. La. Civ.Code art. 2814. The scope of authority of the mandate created by this article is limited to acts within the ordinary course of the business of the partnership. Id., comment (a).
The Civil Code provides for the cessation of a partner’s membership in the partnership due to certain causes and for the effects of that cessation of membership. A partner ceases to be a member of a partnership upon any of the following: his death or interdiction; his being granted an order for relief under Chapter 7 of the Bankruptcy Code; his interest in the partnership being seized under a writ of execution and not released within thirty days; his expulsion from the partnership; or his withdrawal from the partnership. La. Civ. Code art. 2818. The occurrence of any of the enumerated events terminates the membership of the partner, not the partnership itself. Id, comment (a). Upon such a cessation of membership, the former partner, his successors, or the seizing creditor is entitled to an amount equal to the value that the former partner’s share had at the time membership ceased, and the partnership must pay in money that amount as soon as it is determined. La. Civ.Code arts. 2823, 2824. This amount bears interest from the time the party ceases to be a partner. La. Civ.Code 2824 and comment (b). The former partner, his successor, or his seizing creditor is not entitled to an interest in the assets of the partnership, but is only entitled to be paid an amount equal to the value of his interest as of the time his membership ceased. La. Civ.Code art. 2823, comment (a); La. Civ.Code art. 2824.[4] The term “successors” includes heirs, assigns, or anyone standing in the shoes of the former partner. La. Civ.Code art. 2823, comment (b).
Applying the legal principles of partnerships to the present case, it is clear that Terry Smith’s act in entering the 1986 agreement did not have the legal effect of granting Beychok a right to a share in the capital, profits, benefits or assets of the Creative partnership. Obviously, Terry Smith’s actions exceeded a partner’s scope of authority to act as an agent for the partnership, which is limited to acts within the ordinary course of business of the partnership. La. Civ.Code art. 2814, comment (a). No one contends that Smith’s action was within the ordinary course of business. Creative’s partnership agreement expressly provided for equal participation by the partners and did not authorize any partner to grant a third person a share in the capital, profits, income, benefits, or assets of the partnership or to effect a change in the equal one-fourth share of each of the four partners in the capital, profits, benefits, and assets of the partnership. In fact, Creative’s articles of partnership expressly provide the following: “The net profits of the partnership shall be divided equally among the partners and the net losses shall be borne equally among the partners,” Articles of Partnership of Creative Development Company, Article IV; “[t]he relationship *428 between [the partners] can be varied only by agreements in writing signed by [the partners] concurrently herewith or subsequent hereto,” Id., Article 1 XVII; and “[t]his agreement is subject to amendment only with the consent of all partners, and such amendment shall be effective as of such date as may be determined by them.” Id., Article XVIII.
Even in the absence of these stipulations in the partnership agreement, Louisiana Civil Code articles 2803 and 2807 would mandate equal participation by the partners and prohibit amendment of the partnership agreement unless there had been unanimous consent thereto by the partners.[5] La. Civ.Code art. 2803, comment (a); La. Civ.Code art. 2807.
The parties introduced no evidence that the partners unanimously agreed, either by amendment of the articles or by separate agreement, to grant Beychok an interest in the capital, assets, or profits of the partnership, to change the relationships of the partners, or to modify the right of each of the four partners to share equally in the capital, profits, benefits, and assets of the partnership. In rejecting Central State’s contention that Beychok had been admitted as a partner in Creative Development, the majority opinion correctly concludes that “[i]n short, as the unanimous consent of the partners was not evidenced in the 1986 Agreement, then as a matter of law Beychok could not have been admitted as a partner.” Maj. Op. at 415. For the same reason, as there was no unanimous consent of the partners to amend the partnership contract to grant an interest in the capital of the partnership to Beychok, or to change the relationships of the partners, Beychok, as a matter of law, could not have been granted an interest in the capital, income, benefits, or assets of the Creative partnership by Terry Smith. Partnership agreements are contracts which cannot be changed without the consent of the partners.[6]
The majority opinion’s conclusion that each partner of a partnership, without the consent of the other partners, can legally transfer to a third person an interest in the capital of the partnership is based on faulty reasoning, i.e., that if a partner can unilaterally act so as to affect his own individual interest he can also act alone to affect the other partners’ interests in the capital of the partnership.[7] As noted supra, however, such autonomous action by Terry Smith was expressly prohibited by the Creative partnership agreement. Furthermore, even without the express prohibitions in the Creative articles of partner *429 ship, the law prohibits such solo action by a partner affecting the interests of the other partners. La. Civ.Code art. 2807. Otherwise, any partner acting alone and contrary to the wishes of the other partners could dilute each partner’s right to receive his or her original share of the capital, profits, benefits, and assets of the partnership, and thus single-handedly change the relationships between the partners and amend the partnership agreement.
The majority opinion mistakenly relies on Louisiana Civil Code articles 2818 and 2823, governing the causes and effects of cessation of partnership membership, in its attempt to show that one partner without consent of the others may amend the partnership agreement to grant an interest in the capital of the partnership to a third person. When a partner ceases to be a member for one of the reasons stated in Article 2818, and the partnership continues to exist, the former partner, his successor, or the seizing creditor does not acquire an interest in the capital of the partnership as the majority opinion assumes. Instead, the partnership is obliged to pay such person an amount equal to the value that the share of the former partner had at the time the membership ceased. La. Civ. Code art. 2823 and comment (a); La. Civ. Code art. 2818 and comments. That amount draws interest from the time that the former partner’s membership ceased. La. Civ.Code art. 2824. Thus, a debtor-creditor relationship between the partnership and the former partner, his successor, or the seizing creditor is established and fixed as of the time of the cessation of membership. The Code clearly does not provide that a former partner’s interest in the capital may continue after the cessation of his membership in the partnership so as to appreciate or depreciate with the value of the partnership. The cessation of partnership membership has only the specific effects provided for by the Code. Thus, the partnership’s obligation to a former partner, successor, or seizing creditor is expressly provided by law and only in certain specific instances. Articles 2823 et seq. do not expressly or implicitly authorize a partner to amend the partnership agreement to grant capital, equity, or profits interests in the partnership to third persons.
Furthermore, although the majority opinion accurately quotes from Article 2812 and its comment regarding a partner sharing his or her interest with a third person, the majority draws the incorrect inference that a partner can make a third person a direct owner of an interest in the capital of the partnership by sharing his interest. That inference is at odds with Article 2812, which adopts the approach of the French Civil Code. See id., comment. Planiol explains French Civil Code art. 1861 as follows:
[T]he law permits each partner to join with him someone to share with him the risks and benefits of his share. There is then formed a little partnership of a subordinate character between such partner and the third person with whom he contracts, without the other partners being entitled to benefit from, or being liable on such contract as to which they are strangers (Art. 1861). The third person thus associated in a subordinate way with the operations of the partnership is called a “croupier.” [fn.16]
[fn.16:] The use of this word in card or dice games is very old. It is an allusion to the habit which people who formerly travelled by horse had, when carriages were rare and the roads bad, of picking up riders on the crupper to render them a service.
2 Planiol, Civil Law Treatise No. 1975 (La. State Law Institute transl.1959). When a partner elects to share his interest in the partnership with a third person, he cannot thereby establish any relationship between the third person and the partnership or the other partners. The latter remain “strangers” to and insulated from liability due to the fact that the little subordinate partnership is formed strictly between the partner and the third person. In short, the third person is taken on as a “croupier” only by the partner with whom he contracts and he rides only on that *430 partner’s “crupper.” Consequently, Article 2812 does not authorize a partner to create partnership obligations to a third person by sharing his partnership interest with a third party. See MoRRis and Holmes § 2.08 at 68-74. Thus, the majority opinion errs in relying on Article 2812 to support its theory that Terry Smith created and transferred a capital interest in Creative Development because Article 2812 contemplates merely the sharing of a partner’s existing share in the partnership.[8]
Thus, it is clear that under Louisiana law a single partner cannot amend the partnership contract or grant an interest in the capital of the partnership to an outsider without the authorization of the other partners, and that Central States failed to adduce evidence or proof that Terry Smith was vested with authority to transfer any interest in Creative to anyone. Moreover, Central States failed to prove that the undefined “interest” which Terry Smith professed to transfer to Bey-chok was intended even between them to be a capital interest in the Creative partnership.
The law is well settled in Louisiana, this circuit, and generally that a plaintiff who claims that a defendant is legally subjected to a contractual obligation has the burden of proving every fact essential to establish the obligation and that the defendant was a party to and bound by the obligation. E.g., National By-Products, Inc. v. United States, 186 Ct.Cl. 546, 405 F.2d 1256, 1264 (1969); Bell v. Ralston Purina Co., 257 F.2d 31, 32 (10th Cir.1958); Carp v. California-Westem States Life Ins. Co., 252 F.2d 337, 339 (5th Cir.1958); La. Civ.Code arts. 1831 (1987) and 2232 (1870); Kilpatrick v. Kilpatrick, 660 So.2d 182, 185 (La. App. 2 Cir.), writ denied, 664 So.2d 444 (La.1995); Pennington Const. Inc. v. R A Eagle Corp., 652 So.2d 637 (LaApp. 1 Cir.1995); Bordlee v. Pat’s Const. Co. 316 So.2d 16, 17 (LaApp. 4 Cir.1975); Hunter Co. v. Bossier Levee Dist. of La., 115 So.2d 226, 227 (La.App. 2d Cir.1959).
Consequently, even if Central States had proved that Terry Smith was authorized by all of the partners of Creative to transfer an undefined “interest” to Beychok, the record is devoid of any evidence that the transfer of a capital interest was authorized or intended. Because there is no evidence in the record that the partners of Creative vested any authority in Smith to transfer any interest in Creative to Bey-chok, Smith unquestionably did not have authority to transfer a capital or profits interest to him. There is no evidence in the record that the undefined interest which Smith intended to transfer and which Beychok intended to receive was a capital or profits interest in Creative. The written contract itself does not define the interest intended to be transferred. According to the testimony of Rome and Beychok, the intent of the parties was not to transfer a capital or profits interest in Creative to Beychok, and the trial court which saw and heard the witnesses found that the parties indeed did not have such an intention.[9] Central States has fallen far short of carrying its burden to prove that a transfer of an interest in the capital of Creative was authorized, intended or effected.
IV. Issues Which Must Be Decided On Remand
I would affirm the district court’s judgment dismissing Central States’ claims for the reasons I have stated, and I also respectfully disagree with the majority’s limitation of the issues that the district court may consider and decide on remand. Given the majority decision, it must remand *431 the case. But it should send the case back for further proceedings and decision on all of the issues which the district court did not reach in its first judgment. For example, Central States must prove that Creative was a “trade or business” in order to hold it liable under a “brother-sister” or “common control” theory. See 29 U.S.C. § 1301(b)(1). Cf. Commissioner of Internal Revenue v. Groetzinger, 480 U.S. 23, 107 S.Ct. 980, 94 L.Ed.2d 25 (1987); Central States v. Personnel, Inc., 974 F.2d 789 (7th Cir.1992); Susan C. Glen, Central States v. Personnel, Inc.: When Real Estate Investments Create Personal Liability Under the Multiemployer Pension Plan Amendments Act of 1980, 78 Minn.L.Rev. 501 (1964). Therefore, the district court should be directed on remand to hear and decide that issue, as well as any other essential element of the case not reached previously, unless of course the parties have already stipulated or admitted such issues.
V. Conclusion
The majority opinion is at odds with both federal law and Louisiana law, as well as the concept and purposes of partnership as a juridical entity. The majority decides, in effect, that any partner in a partnership has the autonomous legal power to transfer an interest in the capital of a partnership to third persons, which in effect allows any party to the partnership contract to unilaterally amend the contract to affect the interests, rights, and obligations of the other non-consenting partners, change the partners’ relationships, and dilute each partner’s interest in the capital, profits, benefits, and distribution of assets of the partnership. All of these major decisions and changes require the unanimous consent of the partners. La. Civ.Code arts. 2803 and 2807. If this were not the law, each partner would have the autonomous power to create unlimited additional capital and profits interests; each partner would be tempted or forced in self-defense to feather his or her own nest by granting additional interests to family or cronies; and the entire law of partnerships would fall into disarray and probably become defunct. As if this were not enough, the majority’s reading of the Louisiana partnership law, as this case demonstrates, would empower any partner in any partnership to subject all other partners to massive, unforeseeable personal liability, without their consent.
The Central States plaintiffs failed to demonstrate a legal basis under federal law or Louisiana partnership law for Terry Smith’s authority to transfer ownership of either a “profits interest” or “capital interest” in the Creative partnership to Sheldon Beychok. Lacking proof that Smith legally effected the grant or transfer of an interest in the capital or profits of the Creative partnership to Beychok, Central States has also failed to prove that Creative and Wolf Baking were trades or businesses under the “common control” of Beychok. Because the Central States plaintiffs failed to prove either of these elements of their case, their claims against Creative and its partners individually for payment of Wolf Baking’s $1.35 million withdrawal liability were properly dismissed by the district court.

.The same is true with respect to a "profits interest” in a partnership. See cited material in the text accompanying note 4; Arthur B. Willis, et. al. Partnership Taxation ¶ 1.07[4] at 1-114 (6th Ed.1999) ("Neither the Code nor the Regulations contains a definition of a profits interest in a partnership. However, Regulation §§ 1.721 — 1(b)(1) and 1.704-1 (e)(l)(v) discuss partnership capital interests in such a way as to indicate that a profits interest is one which does not entitle the partner to share in partnership assets upon the partner’s withdrawal from the partnership or upon the partner’s liquidation.”) (emphasis added). However, the majority opinion focuses on whether Beychok acquired a "capital interest” (presumably because it is indisputable that he had no right to share in the profits of Creative), so that is the focus of my dissent as well.

. In explaining the significance of the terms "capital interest” vs. "profits interest” in a partnership for tax purposes, Willis states that ”[i]n several areas of partnership tax law, important consequences turn on the measurement of the partners ’ interests in capital, profits, or both.” Id. at 1-110 (emphasis added).

. I also disagree with the majority opinion’s statement of the law with respect to releases of future liability. The majority, supra n. 46, summarily dispenses with Creative's estoppel argument by concluding, in part, that the *426 release agreement could not be construed as releasing the withdrawal liability claim as the agreement was executed before withdrawal liability was triggered and assessed.
Louisiana law clearly allows releases of future actions before they arise if the parties clearly so intend. La. Civ.Code art. 3073; Brown v. Drillers, Inc., 630 So.2d 741, 744, 753 (La.1994); Ritchey v. Azar, 383 So.2d 360, 363 (La.1980); Bogalusa Community Med. Ctr. v. Batiste, 603 So.2d 183, 188 (La. App. 1 Cir.1992). See also America’s Favorite Chicken Co. v. Suryoutomo, 889 F.Supp. 916, 918 (E.D.La.1995)(assignment agreement released all past, present, or future claims arising under franchise agreement). Relinquishing future rights of action is not against public policy unless such rights arise from physical injury or from the gross fault or intentional wrong of another party. Daigle v. Clemco Industries, 613 So.2d 619, 623 (La.1993). Such releases, however, will be narrowly construed to assure the parties understand the agreement and its consequences. Brown, 630 So.2d at 753.
Furthermore, as I read all of the passages of the authority cited by the majority opinion, the common law is consistent with Louisiana law in this respect. American Jurisprudence Second provides, in pertinent part,
The scope of a release is determined by the intention of the parties as expressed in the terms of the particular instrument, considered in the light of all the facts and circumstances.
66 Am.Jur.2d Release § 30, p. 706.
[Rjeleases of rights which have not yet matured under contracts have been held valid and are self-operative, and discharge the future rights or claims when they arise. A release which covers only a present right will not be construed to discharge a demand which was then uncertain and contingent.
66 AmJur.2d Release § 33, p. 710. (emphasis added). The ultimate effect of the release, therefore, depends on the parties' intent. Accord C.J.S. Release § 66, p. 617.

. The rule that the partnership need only make a payment in money protects the partnership in that it does not have to partition its assets in order to make a payment. La. Civ. Code art. 2824, comment (a). The value of the interest may be set by the partnership agreement or by separate agreement, or it may be judicially determined pursuant to the provisions of Article 2825. La. Civ.Code art. 2823, comment (a).

. See Glenn G. Morris and Wendell H. Holmes, 7 Louisiana Civil Law Treatise — Business Organizations § 2.08 at 69 ("Partnership law ... has ... guarded carefully the right of each partner to approve of the identity of all those with whom he is to associate as a coowner.”).

. See Glenn G. Morris and Wendell H. Holmes, 7 Louisiana Civil Law Treatise — Business Organizations § 2.16 at 95-96 (1999)("The unanimity requirement is imposed by the Code or by ancillaries with respect to five decisions apparently considered to be fundamental: amending the contract of partnership, admitting new partners, terminating partnership, ... allowing a partner to withdraw from the partnership if the partnership has been constituted for a term, and merging the partnership with another partnership or business organization. In a sense, every one of the listed decisions may be considered simply variations on the same theme: to amend the contract of partnership ... requires the unanimous consent of the parlies to the contract, i.e., the partners.... [Partnership agreements are considered simple contracts, not subject to change without the approval of the affected parties.”)(footnotes and citations omitted).

. The fallacy of the majority's position is that Louisiana law clearly does not allow a single partner to transfer to a non-partner an interest in the capital of a partnership that all of the partners own in common. Each of the provisions of Louisiana partnership law relied upon by the majority involve the specific effects upon a single partner’s interest in the partnership caused by the death or act of that partner with regard to his own creditors or assignees. The other partners' interests in the partnership are not affected by those acts or events.

. See also Black’s Law Dictionary p. 1121 (6th ed. 199Q)CSubpartnership. One formed where one partner in a firm makes a stranger a partner with him in his share of the profits of that firm. It is not a partnership but an arrangement in which the subpartner shares in the profits and losses of a partner.”)

. The trial court found that the "June 1986 agreement was entered into in order to substitute Bechok [sic] as the creditor of the partnership in lieu of the bakery.”